PRESTON, C. J., LADD, WEAVER, and GAYNOR, JJ., concur.

---

JOHN GAY, Junior, Appellant, v. HOCKING COAL COMPANY, Appellee.

APPEAL AND ERROR: Review Must Follow Trial Theory. Whether a servant may recover under the Workmen's Compensation Act for a so-called *occupational* disease, will not be determined in an action tried on the explicit concession that the master had rejected said act.

MASTER AND SERVANT: Liability of Rejecting Master. The liability of a master who has rejected the provisions of the Workmen's Compensation Act must be worked out solely through the modified common-law action provided by said act for such cases.

MASTER AND SERVANT: Occupational Disease. A miner may not be required to show that an injury to his health was not the result of a so-called occupational disease, when he has shown (a) that the mine owner violated his statutory duty to remove or to neutralize all poisonous gases in his mine, and (b) that such violation was the proximate cause of the injury to the miner's health.

MASTER AND SERVANT: Liability of Rejecting Master.

**NEGLIGENCE:** Unduly Narrowing Pleadings. A pleading which predicates negligence on the presence of "bad air" in a mine should not be narrowed, in the instructions, to the presence of one specified gas, when the evidence fairly reveals the presence in the mine of several different gases.

**MASTER AND SERVANT:** Burden of Proof. A servant who pleads a *specific* act of negligence on the part of a master who has rejerted the conditions of the Workmen's Compensation Act has the burden to establish the same, but he may meet this burden by relying on the *general* statutory presumption of. negligence on the part of the master. (Sec. 2477-m, Code Supp., 1913.)

*Appeal from Monroe District Court.*—D. M. ANDERSON, Judge.

NOVEMBER 16, 1918.

ACTION at law to recover damages for personal injury alleged to have been sustained by reason of the defendant's negligence. There was a verdict and judgment for defendant, and plaintiff appeals.—*Reversed and remanded.*

*John T. Clarkson* and *Fred C. Huebner,* for appellant.

*Burrell & Devitt* and *J. C. Mabry,* for appellee.

WEAVER, J.—The appellee company was engaged in the business of operating a coal mine in which the plaintiff was employed as a miner. It is the plaintiff's claim that, while so employed in the company's mine, the air in the place where he worked became foul and laden with "damps" and other impurities, from the breathing of which he was stricken down, his health seriously impaired, and he was rendered unable to perform labor for a period of about eight months, when he became partially restored; and that he is still weak and unable to do the full work of a man in normal condition. Because of these alleged injuries, he asks a recovery of damages. It is also alleged that the defendant has refused to accept the terms of the Workmen's

Compensation Act.

In answer, the company admits its corporate capacity and its employment of plaintiff to work in a coal mine which it was then operating, but denies all other allegations of the petition.

The issues were tried to a jury, and verdict returned for the defendant. From the judgment on such verdict, this appeal has been taken. The exceptions by appellant relate very largely to the court's charge to the jury, and to the refusal of the plaintiff's request for other instructions.

The view which we take of the record renders it unnecessary for us to go very largely into the details of the testimony. It appears that plaintiff's work in the mine, at the time of his alleged injury, was in what is called "Room No. 10," which was "turned off" the "30th South Entry." Witnesses describe the plan followed to obtain a circulation of air through the rooms and entries where men were expected to work; and it is the claim of plaintiff that the plan, as used and operated, was defective, or was improperly designed, so that the impure air collecting in the plaintiff's room was not effectively removed, and that the injury to his health resulted therefrom. There was evidence from which the jury could have found that he was overcome while at work, and became sick and disabled to perform labor, and that this was the effect of the bad or impure air which is liable to accumulate in mines if it is not excluded or expelled by the use of means properly designed therefor.

It may also be said at this point, in order to better comprehend the bearing of certain rulings of the trial court and certain instructions given the jury, that it is the contention of the appellee: (1) That, at best, plaintiff's testimony tends to show that he suffered from mere sickness or disease, and not a personal injury, within the meaning of the law. In other words, it is appellee's position that the law which permits recovery for personal injuries relates

solely to wounds or bruises or hurts, as distinguished from
suffering, weakness, debility, and loss of time, arising from
what is ordinarily termed sickness or disease; and (2) that
plaintiff was suffering from mere "occupational disease,"
and not from any injury caused by failure of defendant to
properly ventilate the mine.

With the view thus afforded of the attitude of the con-
tending parties with respect to the merits of plaintiff's
claim, we turn our attention to the legal propositions ad-
vanced by counsel.

I.   Notwithstanding plaintiff's allegation that the com-
pany had rejected the terms of the Compensation Act, and
the express concession by the parties, in the course of the
trial, that the appellee had given notice in
due form of law of its rejection of the terms
of said act, and had filed the same with the
Industrial Commissioner, yet, in defend-
ant's argument to this court, its counsel lay down, as their
first proposition, that "it is conclusively presumed that de-
fendant had elected to come under the compensation law,"
and "plaintiff did not overcome this presumption of the
statute that defendant was operating under the statute at
the very time in question." It is further to be noted that
practically the entire brief of appellee is devoted to the con-
struction and effect of the Workmen's Compensation Act,
and to the question whether a recovery can be had under
said act when the alleged injury is shown to be what coun-
sel call an "occupational disease." But such discussion has
very little pertinence to the record which this appeal brings
up for our attention. Not only was the rejection admitted
on the trial, but, even if this be thought in some way avoid-
able, the trial court expressly charged the jury that defend-
ant had made his election, and had rejected the act. That
instruction was the law of the case for the jury, and it must
be given effect as the law of the case for the purposes of this

1. APPEAL AND
   ERROR: review
   must follow
   trial theory.

appeal.   Defendant has not appealed, and its. case here
must be treated from the standpoint of the rights and lia-
bilities of an employer who has refused to come in under
the act.   This being true, we think it entirely immaterial
whether, under the provisions of that act, a so-called oc-
cupational disease contracted by a workman in the service
of his employer would afford ground for the recovery of
compensation.   Having rejected the act, defendant is lia-
ble in the same manner and to the same ex-

2. MASTER AND
SERVANT : lia-
bility of reject-
ing master.

tent as it would have been had the Compen-
sation Act never been enacted, except that,
when sued by an employe for a personal in-
jury arising out of and in the course of his employment,
it will be presumed that the injury was caused by the em-
ployer's negligence, and certain common-law defenses will
not be available to him.   We may pass, then, as being out-
side the scope of the present case, the question whether an
employer may be held liable to a workman on account of an
occupational disease contracted in the service of the former,
where both have accepted the terms of the Compensation
Act.

   Leaving out of the question the provision of the Com-
pensation Act, what duty did defendant owe the plaintiff?
Without attempting any comprehensive statement of the
law of master and servant, it owed him at

3. MASTER AND
SERVANT : occu-
pational dis-
ease.

least the familiar duty to furnish him a
reasonably safe place to work, an obliga-
tion which the statute had expanded by a
mandatory requirement as to the manner in which that
safety should be secured.   The provision to which we refer
is found in the Code Supplement, 1913, and reads as fol-
lows:

   "The owner, operator, lessee or person in charge of any
mine, whether operated by shaft, slope or drift, shall pro-
vide and maintain an amount of ventilation not less than

one hundred cubic feet of air per minute for each person employed in the mine, nor less than five hundred cubic feet of air per minute for each mule, horse or other animal used therein, which shall be so circulated throughout the mine so as to dilute, render harmless and expel all noxious and poisonous gases in all working parts of the same." Section 2488, Supplement to the Code, 1913.

Construing this statute, we have said that:

"Before the proprietor has discharged his duty, regardless of the contrivances employed or the amount of ventilation, the gases must be rendered harmless, by being diluted or expelled. * * * Every person while 'violating an express statute is a wrongdoer, and is, *ex necessitate*, negligent in the eyes of the law; and an innocent person within its protection, injured thereby, is entitled to a civil remedy by way of damages." *Mosgrove v. Zimbleman Coal Co.*, 110 Iowa 169, 172.

If the air in this mine had become charged with poisonous gases to an extent to materially injure the plaintiff while employed therein, it follows, of necessity, that defendant had failed in its duty to so ventilate the room or place of work as to "render harmless and expel" the deleterious agent causing such injury; and in such case it follows, with equal certainty, that plaintiff would be entitled to recover his damages, if any.

Such, indeed, was the charge of the court to the jury; but the instructions were qualified by a proposition, repeated in various forms, which, to a material extent, deprived the plaintiff of the benefit of the statement of law embodied therein. In the sixth and seventh paragraphs of the charge, the jurors were told that it was for them, under the evidence, to find whether plaintiff's illness "was the result of and caused by carbon monoxide poisoning, as charged by him;" and if this was found to be true, they were *then* to consider and determine whether the resulting

ailment *"was an occupational disease,* or whether it was a disease caused by the negligence of the defendant in failing to comply with the state law as to the amount of air furnished to the plaintiff's working place at the time of his injury." In Paragraph 8, the court said:

"An occupational disease is one that may be expected to arise in the course of an employment, and is an incident of such employment. An occupational disease is not covered by nor embraced within the provisions of the Workmen's Compensation Act, and the employer is, therefore, not liable in damages to one who contracts and suffers from such disease."

Paragraph 9 places the burden upon the plaintiff to prove, not only that he received the alleged injury in the defendant's mine, but also that his disability or affliction "was not the result of an occupational disease;" and if he has failed to establish either fact, he cannot recover. We also quote paragraphs 10 and 13 in full.

"No. 10. If you find that plaintiff *was injured as claimed by him, and that such injury resulted in the disabilities alleged,* and *if you further find that such disabilities are not the result of an occupational disease, as herein explained,* then *you are instructed that the law presumes that such injury and resulting disabilities are the result of the negligence of the defendant company;* and, in order to relieve itself from liability therefor, it must prove, by the preponderance or greater weight of the evidence in the case, its freedom from negligence resulting in such injury and consequent disabilities."

"No. 13. If you have found that plaintiff was *injured substantially as claimed by him, and that such injury resulted in the affliction of neurasthenia,* and if you further find that said affliction was *not an occupational disease, as hereinbefore explained,* and if you further find that the defendant has failed to rebut the presumption of negligence

upon its part which was the proximate cause of plaintiff's alleged injury, by the preponderance or greater weight of the evidence in the case, then you are advised that plaintiff will be entitled to a verdict at your hands; and, if you so find, you will proceed to fix and determine the amount of plaintiff's recovery, as explained in the following instructions."

These instructions, as will be seen, make the matter of an occupational disease very prominent. Briefly stated, they tell the jury that no compensation is provided in the Compensation Act for a workman contracting an occupational disease, *and therefore*, the employer is not to be held liable for any injury of that nature; and that, although it be found that plaintiff "was injured as claimed by him, and that such injuries resulted in the disabilities alleged," he can recover damages only upon further proof that such disabilities are not the result of an occupational disease.

We cannot avoid the conclusion that the charge, so far as quoted, is erroneous, both in substance and effect. An "occupational disease," suffered by a servant or employe, if it means anything, as distinguished from a disease caused or superinduced by an actionable wrong or injury, is neither more nor less than a disease which is the usual incident or result of the particular employment in which the workman is engaged, as distinguished from one which is caused or brought about by the employer's failure in his duty to furnish him a safe place to work. If the employer fails to provide a reasonably safe place to work, or fails to observe the specific requirements of the statute with respect thereto, and, as a result of such neglect, the employe is injured, the liability of such employer cannot be avoided by calling such injury an "occupational disease," or by showing that disease of that nature is often the accompaniment or result of such employment, even when all due care has been exercised by the employer. The material questions, under the issues

and admitted facts in this case, are: Was the defendant negligent with respect to the ventilation of the mine where plaintiff was employed? If defendant was thus negligent, did the plaintiff thereby sustain the injury of which he complains? If these two facts be established, defendant's liability to respond in damages is not open to question. There is no principle or rule of law by which, in order to make a prima-facie case, plaintiff was bound to plead or prove that he was not suffering from an occupational or other variety of disease, except as such negation .may be implied from proof that his injury was the proximate result of the defendant's failure to perform its statutory duty to expel the gas from the mine, or otherwise render it harmless. It may also be added, in view of the argument of counsel, that, if defendant did fail in its duty in this respect, and plaintiff was thereby physically overcome or disabled, to a degree causing him to suffer injury or loss, defendant's liability is neither avoided nor lessened by reason of the·fact that plaintiff sustained no wound or bruise or other hurt of a traumatic character or origin. A wrongful injury which operates to destroy or undermine or impair the health of another is no less actionable than is a wrong from which the injured person sustains wounds or bruises or broken bones.

II.   There was likewise error in the charge to the jury where, after defining "occupational disease," the court instructed that "an occupational disease is not covered by or embraced in the provisions of the Work-

4. MASTER AND SERVANT : liability of rejecting master.

men's Compensation Act, and the employer is, therefore, not liable in damages to one who contracts and suffers from such disease." This point has been substantially covered in the preceding paragraph; but we repeat that plaintiff's right of action, if any he has, is not founded upon or in any manner controlled by the Workmen's Compensation Act. The

defendant had refused to accept the terms of that act, and the parties to this suit, therefore, stand in the same position which they would have occupied had that statute never been enacted, except that defendant, by its rejection of the act, has deprived itself of the benefit of certain common-law defenses. It follows, therefore, that the question whether, in an assessment of damages under the Workmen's Compensation Statute, any recovery can be had against an employer on account of an occupational disease contracted by a workman, is not in this case; and the instruction upon that proposition was quite certain to confuse and mislead the jury. The claim of the plaintiff is that defendant was, by another statute, bound to expel and render harmless all noxious and poisonous gases in the room or place where he was required to work; that defendant failed in this duty; and that plaintiff was thereby materially injured. An injury thus sustained was actionable before the Compensation Act became a law; it is no less actionable now; and the defendant, having rejected said act, cannot have the advantage or benefit of any of its provisions to limit or restrict its liability to respond in damages.

For the purposes of this case, it is not necessary even to decide or consider what might be the duty or liability of the defendant on purely common-law principles. The statute has placed upon mine operators a positive duty to so ventilate all working parts of their mines as "to render harmless and expel all noxious and poisonous gases." As pointed out by us in *Mosgrove v. Zimbleman*, supra, this statute does not attempt to prescribe or dictate the plan of ventilation; but it does require a distinctly specified result. Failure to produce that result, and permitting or requiring employes to work in a mine where they are exposed to danger or injury from the presence of such gases, is negligence; and for any injury thus resulting to an employe without fault on his own part, the employer is liable.

It is not within the province of the court to distinguish between injuries proximately resulting from such negligence, and say that for some of them no liability is incurred.

III. In Paragraph 6 of the charge, the court informed the jury that plaintiff claimed to have been injured by reason of "breathing carbon monoxide gas, commonly termed white damp." To this the plaintiff excepts,

5. NEGLIGENCE: unduly narrowing pleadings.

as unduly narrowing the scope of his claim. The petition charges simply impurity of the air in the mine, such as is commonly termed in mining, "bad air." Some of the witnesses speak of the poisonous gases as "carbon monoxide" and "carbon dioxide," and others distinguish between what they call "black damp," a heavy gas, which settles on or near the mine floor, and "white damp," a lighter gas which rises to or near the mine roof. The information to be found in this record is hardly sufficient to enable a court of nonexperts to fully comprehend the nature and bearing of all these distinctions. It is quite clear, however, that the court's statement of the plaintiff's claim is less comprehensive than the allegations of the petition; and we are unable to say, from an examination of the abstract, that the evidence on plaintiff's part was such as to indicate "white damp" alone as the cause of his alleged injury. His charge in the petition is broad enough to entitle him to recover if he proves that he was injured by the presence in the mine of noxious gases of any kind, and the jury should have been so instructed. Were this the only reason for a reversal, we might hesitate to set aside the verdict on such ground alone; but, a new trial being inevitable on other grounds, we mention this instruction that the objection thereto may be avoided on another hearing.

IV. It is said for the appellee that the exceptions argued for the appellant, relating to the charge of the court, were not taken in time, and that this court should, therefore, treat them as waived. We think, however, that the

exceptions taken of record to the charge as made, and to the refusal of plaintiff's requests for instructions covering the several propositions we have considered in this opinion, are sufficiently specific and comprehensive, and that the right to have the questions so raised considered and passed upon by us was not waived.

It is further said for appellee that the plaintiff asked the court to instruct the jury to the effect that the burden was upon him to show, by a preponderance of the evidence, that he sustained the injury complained of, and that by such request he waived his right to object to a similar charge by the court. This may be admitted; but it is very far from being a waiver of objection to a charge that the burden so assumed by the plaintiff included a requirement for proof on his part that his injury was not the result of an occupational disease.

The statute does not relieve the plaintiff from the necessity of proving his injury, and that such injury arose out of and in the course of his employment; but, these facts being shown, and it appearing that the em-

6. MASTER AND SERVANT: burden of proof.

ployer has refused to accept the provisions of the Workmen's Compensation Act, then the negligence of such employer is presumed, as is also the fact that such negligence was the proximate cause of the injury. Section 2477-m, Code Supplement, 1913. In other words, the plaintiff in cases of this kind comes into court with the usual burden of establishing the negligence alleged, as well as his resulting injury; but, under the statute referred to, he discharges this burden and makes a prima-facie case, by proof of his employment and by the fact that he was injured and that the injury sustained arose out of and in the course of his employment; the burden being then cast upon the employer to rebut the statutory presumption of actionable negligence. In other words, such proof is, in itself, sufficient to raise a presumption which

serves as evidence of the employer's negligence, and that such negligence was the proximate cause of the injury. *Mitchell v. Swanwood Coal Co.*, 182 Iowa 1001. We find nothing in the record to indicate that the appellant waived the benefit of such presumption.

Other exceptions to the court's charge and to its rulings on matters of evidence have been argued; but, in so far as such questions are likely to arise on another trial, they seem to be sufficiently controlled and governed by the holdings already announced in this opinion, and we shall not extend it for their further consideration.

For the reasons stated, a new trial must be ordered, and the judgment below is, therefore, reversed, and the cause remanded to the district court.—*Reversed and remanded.*

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.