Hillsborough, }
Jan. 2, 1934. }

PHYLLIS THOMSON, *Adm'x*

*v.*

THE AMOSKEAG MANUFACTURING COMPANY.

*Samuel A. Margolis*, (by brief and orally), for the plaintiff.

*Lucier & Dowd* and *Wyman, Starr, Booth & Wadleigh* (*Mr. Ralph E. Langdell* orally), for the defendant.

PEASLEE, C. J.   The injury found by the master consisted of arousing into activity the germs of tuberculosis which were theretofore present in the workman's system in an inactive state.   Three causes contributing thereto, and each arising in the course of his employment, are found.   Poisonous gases were present in the work-place under normal conditions, but these conditions were aggravated by poor ventilation and by the escape of more gases through leaky valves. A third cause was found in the exposure of the workman to extreme cold, when in a heated condition.   The inhalation of the gases "irritated his throat and lungs and gradually wore down his resistance to the tuberculosis germs in his system."   The exposure "caused him to have frequent colds which diminished his resistance to the tuberculosis germs."

It was also found that "the injury which the plaintiff received while in the employ of the defendant was not due to any sudden breathing in of a large amount of gases from acid and chemicals, but to the daily breathing in of such gases over the whole period of his employment and to being frequently sent outside the plant on cold winter nights while sweaty to wheel refuse to the River."   Upon these facts, accidental injury, arising out of and in the course of the employment, was found.

The plaintiff correctly assumes that the fact that the workman's unsound health contributed to his illness is not an answer to a claim for compensation.   *Guay* v. *Company*, 83 N. H. 392.   The claim does not fail for this reason, but because there was no accident, arising out of and in the course of the employment.   *Lybolt* v. *Company*, 85 N. H. 262.

In urging that the case is not outside the provisions of the statute, much reliance is put upon the English decisions.   It seems to be as-

sumed that the earlier decisions here are based upon the reasoning and conclusions announced there. But the recent conclusions of the courts in that jurisdiction have gone beyond the earlier cases there and have not been adopted here. In *Guay* v. *Company*, 83 N. H. 392, the conflict in the English cases is noted, and a considerable number of American cases on the same topic are cited. The further review of the English authorities in *Eaton* v. *Proctor*, 85 N. H. 398, was for the purpose of giving adequate consideration to the argument that the decision in the *Guay* case rested in part at least upon an erroneous idea that unexpected result was treated as an accident by the English law. The decisions were examined for the purpose of showing that the *Guay* case did not conflict with the later English cases, on this point.

It is undoubtedly true that recent English decisions have greatly extended the application of the English act, and that if those cases were to be followed the plaintiff might be found to be entitled to compensation. The course of reasoning by which the change of view by the English courts has been supported, leaves entirely out of the problem the significance of those provisions of the act which treat the accident or the injury as an event definitely located at some specific time.

The whole relative situation may be summed up in the statement that our decisions have treated the act as affording relief in a definitely limited area, and the boundaries held to have been established are such as can be appreciated by those not versed in medicine or other sciences. On the other hand, the results progressively reached in England have imputed to the parliament an intent to use language in a rather unusual sense, and the opinions have ignored the difficulties which arise on attempting to reconcile the broad range of liability with other sections of the act. See the dissenting opinion of Lord *Atkinson* in *Innes* v. *Kynoch*, [1919] A. C. 765.

The remarks of Lord *Robertson* in *Fenton* v. *Thorley*, [1903] A. C. 443, 452, in relation to argument of counsel, apply as well to some of the more recent decisions. While he applied them to arguments in favor of a restrictive construction of the act, they are equally pertinent here. "Much poring over the word 'accident' by learned counsel has evolved some subtle reasoning about these sections. I confess that the arguments seem to me to be entirely over the heads of Parliament, of employers, and of workmen." It is our opinion that our simpler application of this venture into a new field of accountability, accords more nearly with the expressed intent of the legislature.

This view is confirmed by recent legislation, which in two instances has adopted the announced meaning of the term "injury,"

as used in this statute. Laws 1933, *cc.* 40, 153. Before this legislation was enacted the judicial interpretation of the statutory limitations upon the liability imposed had been stated in two decisions.

In *Guay* v. *Company*, 83 N. H. 392, it was decided that the statute provides for compensation only when there has been an accidental injury, definite as to time and place, and that while the accidental feature might consist of either cause or effect, it must occur in the course of the employment. The decision that recovery was thus limited was based upon the use of the terms "accident" and "injury" in sections five and six of the original act (Laws 1911, *c.* 163). These terms being there used as evidently naming a fixed event, it was held that such use led to the conclusion that the legislature did not intend to provide compensation for injuries whose origin or manifestation was not thus accidental.

The case was decided five years ago, and was reaffirmed in *Lybolt* v. *Company*, 85 N. H. 262. In the later case the employment was causal, but the effect was gradual, and the unexpected and sudden manifestation thereof did not occur in the course of the employment. Recovery was denied because there was no accident in the course of the employment.

In the general revision of 1926 a part of section five of the original act, containing the phrase "during the first fourteen days after an injury" became section thirteen, and a part of the original section six, providing for payment "computed from the time of the injury," became section twenty-one. P. L., *c.* 178. In 1933 each of these sections was amended in other respects, but the reference to the injury as a point of time from which computations were to be made was in each instance reënacted without change or modification. Laws 1933, *cc.* 40, 153.

While this is not a direct legislative adoption of the construction placed upon section three of the original act, describing the employer's liability, it manifests a legislative purpose not to depart from the limitations of liability as set forth in the *Guay* and *Lybolt* cases.

Further collateral confirmation of this idea is found in Laws 1933, chapter 44. This act amended an earlier one (Laws 1929, *c.* 140), and provided for compensation to state employees, not exceeding the amounts allowed by the schedules contained in Public Laws, chapter 178, for "personal injuries by accident arising out of and in the course of their employment."

It is my opinion, in which my associates do not agree, that these enactments are some evidence of a legislative purpose not to broaden the description of compensable misfortune, as contained in the orig-

inal act and construed by the court. Each amendment provided for more compensation, one as to temporary relief (c. 40) the other as to minimum benefits (c. 153), and the third act brought the state as employer within certain provisions of the general law. (c. 44).

In the *Guay* case attention was specifically called to the facts that there were good reasons for making the relief more general, and that the act was so drawn that it was difficult to ascertain the legislative purpose. In the *Lybolt* case it was said that argument that the distinction made by the statute as interpreted is unjust and irrational, afforded no ground for extending liability beyond what the legislature had provided. In view of these specific references to the alleged errors of the court in the interpretation of the original act, the course taken by the legislature when thereafter dealing with extensions of the statutory benefits is of more than usual significance.

It is suggested that as the cases which have been decided deal with result as an accident they are not controlling when there is evidence of accidental cause; and that the element of gas escaping through leaky valves may well be treated as a fortuitous causal event answering the call of the statute. But the various requirements of the statute, which severally demand a definite event, apply as much to one class of accidental occurrence as the other. Whichever feature of the misfortune is relied upon to fulfill the statutory requirement of something accidental, it must of course be equally capable of localization.

The specific finding is that the injury "was not due to any sudden breathing in of a large amount of gases from acid and chemicals, but to the daily breathing in of such gases over the whole period of his employment." The injury resulted from the prevailing conditions under which the decedent worked. There was nothing in the nature of an accident, as that term is used in our statute. "The chargeable disability is only that resulting from accidents incurred in employment." *Neault* v. *Company, ante,* 231, 232.

The benefits of the act do not include compensation for diseases (whether occupational or not) gradually caused or accelerated by the employment, but which are not manifested in the course of the employment in the manner indicated by the cases heretofore decided. Whether the benefits should be so extended, is a matter to be determined by the legislature.

*Petition dismissed.*

WOODBURY, J., did not sit: BRANCH, J., dissented; the others concurred.

BRANCH, J. *Dissenting.* This is a petition for compensation under the employers' liability and workmen's compensation act, (P. L., *c.* 178) originally brought by the plaintiff's intestate, Joseph C. Thomson, who died during the pendency of these proceedings. The case was sent to a master who found the following facts. The defendant had accepted the provisions of the act above referred to. The deceased was employed in the defendant's rayon plant in Manchester from April 13, 1931 to January 13, 1932, doing work which came within the provisions of section 1, paragraph II of said act. In this portion of its plant large quantities of acids and chemicals were used, "including carbon bi-sulphite, a very dangerous chemical." "The ventilation was very bad" and "it happened quite often that valves leaked and chemicals escaped." As a result of these conditions, the deceased "was constantly subjected to breathing in gases from acids and chemicals with poor ventilation. This irritated his throat and lungs and gradually wore down his resistance" to tuberculosis germs which were present in his system in an inactive state when he went to work. The deceased was "also often sent out while sweaty on cold winter nights" to dump refuse. "This caused him to have frequent colds" which still further diminished his resistance to the tuberculosis infection. As a result of the conditions under which he labored "the tuberculosis germs in his system became active" about three months previous to the time when the deceased left work on January 13, 1932. An x-ray photograph of his lungs taken within a few days thereafter indicated "gas poisoning with tuberculosis present." The deceased also "developed some mental derangement which indicated gas poisoning." After finding the foregoing facts, the master concluded as follows:

"The injury which plaintiff received while in the employ of the defendant was not due to any sudden breathing in of a large amount of gases from acid and chemicals, but to the daily breathing in of such gases over the whole period of his employment and to being frequently sent outside the plant on cold winter nights while sweaty to wheel refuse to the River. I find the plaintiff did suffer an accidental injury arising out of and in the course of his employment."

Upon the coming in of the report, the defendant moved for judgment thereon because, upon the facts found, it could not be held that there was any accident arising out of and in the course of the employment within the meaning of the statute. The question of law thus presented was transferred without ruling.

The statute provides that an employer who has accepted the pro-

visions of the employers' liability and workmen's compensation act "shall thereafter be liable to all workmen engaged in any of the employments specified in section 1 for any injury arising out of and in the course of their employment . . ." P. L., c. 178, s. 4. In order to establish a claim under this act "it is necessary that three elements be proved. The injury must be accidental (*Guay* v. *Company*, 83 N. H. 392), it must arise out of the employment [*Eaton* v. *Proctor*, 85 N. H. 398], and it must occur in the course of that employment." *Lybolt* v. *Company*, 85 N. H. 262. The contraction of a disease in the ordinary course of the work, unaccompanied by any extraordinary manifestation of injury during the time of the actual employment is not an accidental injury and is not compensable. *Lybolt* v. *Company*, *supra*. But when a workman collapses or otherwise manifests acute symptoms of disease during the course of his work, the occurrence is treated as an accidental injury. It was accordingly held in *Guay* v. *Company*, *supra*, that a petition for compensation was not demurrable which alleged that a deceased workman had a diseased heart which caused his death as a result of over-exertion at his work. The collapse of the deceased while at work was the accidental injury which was held to bring the case within the statute. In *Eaton* v. *Proctor*, *supra*, accidental injury of a similar nature was found to be established, but recovery was denied because it was not proved that the injury arose out of the employment. In the *Guay* case the court quoted the following language from *Brodin's* case, 124 Me. 162:

"In the majority of jurisdictions, and we think by weight of authority, it has been held that the phraseology of the compensation acts is broad enough to include all non-occupational diseases although not preceded by traumatic causes provided it is clearly shown that the disease arose out of and in the course of the employment and was unusual, undesigned, unexpected and sudden."

In the *Guay* case the adjectives, "unusual, undesigned, unexpected and sudden," which are used by the Maine court, were applicable to the injuries complained of, and that case, therefore, establishes the proposition that an injury describable in this way is an accidental injury and compensable. In no case, however, have we held that the converse of this proposition is true. We have never stated that the adjectives used by the Maine court are terms of limitation as well as description, or that no injury is compensable unless describable by all of these words. Nor, indeed, does the language quoted from *Brodin's* case contain any such statement. It says only that diseases thus describable are compensable. *Non constat* that other diseases

to which one or more of the four adjectives are inapplicable are not compensable.

It is said in another Maine case, however, that "accident has been defined, in cases under the act, as an unusual, undesigned, unexpected, and sudden event resulting in injury." *Dillingham's Case*, 127 Me. 245. We have never adopted this definition. On the contrary, "The English definition of accident as used in this act has already been adopted in this state. 'As these acts are construed, any untoward and unexpected event is an accident. *Fenton* v. *Thorley & Co.*, [1903] A. C. 443. That is, 'accident' is used in its popular sense'." *Guay* v. *Company, supra*, 395; *Boody* v. *Company*, 77 N. H. 208.

Not only have we definitely accepted the declaration of the House of Lords in *Fenton* v. *Thorley, supra*, that the term accident is used in its popular sense, but we have relied upon the later English decisions for further exegesis of the popular sense of the term. Thus in *Guay* v. *Company, supra*, the English cases were cited as authority for the conclusion that an accident might consist of either cause or effect, and in *Eaton* v. *Proctor, supra*, the English decisions were further reviewed for the purpose of showing that the *Guay* case did not conflict with later English cases upon this point. Having gone thus far along the trail marked out by the English courts, it is plain that if we continue to follow the same guides we must grant the plaintiff's petition in this case. The decisions of the House of Lords in the famous anthrax case, *Brinton's Ltd.* v. *Turvey*, [1905] A. C. 230, and *Innes* or *Grant* v. *Kynoch*, [1919] A. C. 765, plus the more recent decisions of the court of appeal in *Selvage* v. *Burrell*, [1921] 1 K. B. 355 and *Williams* v. *Guest*, [1926] 1 K. B. 497, leave no room for doubt upon this point.

It has been suggested, however, that the results progressively reached in England have imputed to parliament an intent to use language in a rather unusual sense, and that a narrow construction of our statute accords more nearly with the expressed intent of the legislature. We are, therefore, called upon to consider the question whether the facts found by the master are inconsistent with his conclusion that "the plaintiff did suffer an accidental injury arising out of and in the course of his employment." With reference to this question the English decisions are to be considered as persuasive but not binding authorities.

In the first place it should be definitely stated that the death of the decedent did not result from an "occupational disease" under any rational definition of that term. In one of the cases upon which the

defendant strongly relies, we find this definition, "An occupational or industrial disease is one normally peculiar to and gradually caused by the occupation in which the afflicted employee is or was regularly engaged, and to which everyone similarly working in the same industry is alike constantly exposed." *Dillingham's Case, supra.* A somewhat similar definition was given by the Ohio court in the case of *Industrial Commission* v. *Roth*, 98 Ohio St. 34. As a description of the typical factual situation, the above statement is not open to serious objection, but it does not state the legal test of an occupational disease. The true conception of an occupational disease is one to which workmen are necessarily exposed after the employer has performed his full duty of exercising reasonable care for their safety. The distinction between occupational and non-occupational diseases is the same as that between ordinary and extraordinary risks of the employment. In fact the risk of contracting a true occupational disease is one of the ordinary risks which a servant with knowledge of the facts would be held to assume at common law. Lord *Herschell* in *Smith* v. *Baker*, [1891] A. C. 325, 360. But the risk of contracting a disease because of the employer's negligence in creating a dangerous situation is not an ordinary risk of the employment nor is a disease thus contracted an occupational disease. "An 'occupational disease' . . . is neither more nor less than a disease which is the usual incident or result of the particular employment in which the workman is engaged, as distinguished from one which is caused or brought about by the employer's failure in his duty to furnish him a safe place to work. If the employer fails to provide a reasonably safe place to work, or fails to observe the specific requirements of the statute with respect thereto, and, as a result of such neglect, the employe is injured, the liability of such employer cannot be avoided by calling such injury an 'occupational disease' or by showing that disease of that nature is often the accompaniment or result of such employment, even when all due care has been exercised by the employer." *Gay* v. *Company*, 184 Ia. 949; 1 Schneider, Workmen's Compensation Law, s. 223.

In the present case the primary cause of the servant's death was gas poisoning from carbon bi-sulphite which lighted up an inactive tuberculosis infection. An x-ray photograph of his lungs taken a few days after he left work indicated "gas poisoning with tuberculosis present." His condition was accounted for by the fact that he "was constantly subjected to breathing in gases from acids and chemicals with poor ventilation." The presence of gases in the air was findably due to the fact that "it happened quite often that valves leaked and

chemicals escaped" and "the ventilation was very bad." As a contributing cause to the development of tuberculosis, the master found that the deceased was "also often sent out while sweaty in cold weather" to dump refuse which "caused him to have frequent colds which diminished his resistance to the tuberculosis germs in his system." There is no suggestion in the record that either gas poisoning or tuberculosis is "normally peculiar" to work in the defendant's rayon plant or that everyone similarly employed in the same industry is "alike constantly exposed" to them.

Here we have a case in which it might be found that the deceased was poisoned by gas through the negligence of his employer, and sustained injuries for which he might have maintained an action at common law. *Harvey* v. *Welch, ante,* 72. A disease thus caused is not an occupational disease.

This conclusion disposes of the major portion of the defendant's argument in which it is sought to defeat the plaintiff's claim upon the ground that the record "conclusively shows that the plaintiff's disability was caused solely by the cumulative effect of daily exposure to an unfavorable environment," and in support of which many cases of occupational diseases are cited.

Another question of equal importance is raised, however, by the argument that the injury suffered by the deceased was not accidental and for this reason was not compensable. The defendant's contention necessarily is that compensation cannot be awarded for an injury caused by the negligence of the employer and therefore actionable at common law, because the disability of the deceased did not "flow from some *undesigned, unexpected, unusual* and *sudden* manifestation, definite as to time, place and consequences," or as it is elsewhere phrased in defendant's brief, because the cause of his condition "had no situs or time of inception." In regard to the meaning of the word "accident" this court has said, "There is nothing that can be called a consensus of opinion." *Boody* v. *Company,* 77 N. H. 208, 213. It has been said by high authority that "it is impossible to define what is the meaning of an accident in all cases, or completely within this Act." *Pollock,* M. R. in *Williams* v. *Guest & a. Lim't'd* [1926] 1 K. B. 497, 501. In order to dispose of this case it is not necessary for us to undertake the difficult, if not impossible, task of framing such a definition, for we think that a consideration of the language and purposes of the act indicate clearly that this particular injury was accidental according to the popular usage of the word which determines its legal significance.

It is important here to note two of the purposes sought to be accomplished by the employers' liability and workmen's compensation act (P. L., c. 178). The first was to provide a new remedy for injuries already actionable which should be swifter, cheaper and more certain than an action of common law. Workmen's compensation acts "are highly remedial in that they offer to the employee as a substitute for the common-law action a certain and sure remedy applicable to all cases of injury not due to his wilful misconduct. ... Certainty of relief to all injured employees not guilty of wilful misconduct is assured in the place of uncertain relief to a limited number." *Mulhall* v. *Company*, 80 N. H. 194, 199, 200. It is believed that the language last quoted accurately states the purpose of the act if not the results of its actual operation. The second purpose was to provide compensation for other injuries which up to that time were not actionable at all. "Compensation is not dependent upon any fault of the employer; but is awarded whenever the fortuitous event overtakes the workman in the course of and out of his employment." *Guay* v. *Company, supra,* 396. The first of these purposes is the one which now invites particular attention.

Sections 11 and 12 of the act give to an injured workman in unrestricted terms a choice of remedies. He may either sue at common law or claim compensation under the act, but he cannot do both, and having made his election, he must abide by it. There is nothing in the language of these sections which indicates any conscious purpose on the part of the legislature to exclude from the category of compensable injuries any harm which was then redressable by an action on the case for negligence. Having undertaken to provide a new form of remedy for injuries previously actionable, it cannot be supposed that the members of the general court then proceeded to exclude from the operation of the new remedy a comparatively small class of cases indistinguishable upon any economic or moral ground from those included within its scope. Such a purpose would not only be irrational but so inconsistent with the general humanitarian scheme of the act that we must conclude that the law makers did not have it in mind. The requirement of the statute that injuries for which compensation is sought must be accidental, leads to no such incongruous and unintended result.

In the language of the street, actions for negligence are universally referred to as "accident cases." A collision or other mishap is called an accident although it may be due to the grossest negligence. If in conversation, or in a charge to the jury, it is desired to suggest the

conception of harm caused or suffered without fault, the word "accident" must be qualified by some adjective such as "pure" in order to convey the idea. In short, popular usage sanctions the employment of the word "accident" to describe any injury negligently inflicted. "It [an accident] is something that might possibly be prevented by due care and caution." *Industrial Commission* v. *Roth*, 98 Oh. St., 34; *Industrial Commission* v. *Burckard*, 112 Oh. St. 372. Accordingly it must be held that an injury caused by the negligence of the employer is accidental within the meaning of the statute. The provisions of our statute, "were meant to include every injury suffered in the course of employment for which there was an existing right of action at the time the act was passed." *Baggot Co.* v. *Industrial Comm'n*, 290 Ill. 530.

This is merely a specific application of the rule which appears to be everywhere well settled that a disease contracted as a direct result of unusual circumstances connected with the work is considered as an injury caused by accident. Numerous cases supporting and illustrating this principle are collected in the following notes: L. R. A. 1916 A, 289, 290; L. R. A. 1917 D, 80, 108; L. R. A. 1918 F, 867, 872; 6 A. L. R., 1466, 1467; 23 A. L. R., 335. A typical case of this kind is *Vennen* v. *Company*, 161 Wis. 370, in which an employee contracted typhoid fever from drinking contaminated water negligently furnished by his employer. Also *Victory Sparkler &c. Co.* v. *Francks*, 147 Md. 368, where the plaintiff contracted phosphorous poisoning by breathing in "dangerous and noxious fumes and gases, wrongfully and negligently permitted by the appellant to be collected in the place where she worked, without warning or notice to her."

In the case at bar the accident was the breathing in of poison gas, present in the room where the deceased worked, because of the negligence of the defendant. The fact that there was a series of such accidents, no one of which was solely responsible for the resulting harm to the deceased, does not in the least change their character as accidents. *Victory Sparkler Co.* v. *Francks, supra*; *Bethlehem Steel Co.* v. *Traylor*, 158 Md. 116; *Selvage* v. *Burrell*, [1921] 1 K. B. 355. The plaintiff's injury to which these accidents gave accidental character was the resulting gas poisoning and tuberculosis.

We are told, however, that the statute, as construed in the *Guay* case provides for compensation only when there has been "an accidental injury, definite as to time and place" and that the facts of the present case do not answer this requirement. It should be noted that this form of expression or its equivalent does not appear in the

*Guay* case. In that opinion (*p.* 393) we read, "taking the statute as a whole and so construing it that all parts will be given effect, the conclusion seems to follow that the thought to be expressed was that liability was imposed only for accidental injury," and again (*p.* 394) "unless some clearly defined event marked the applicability of the compensation provision a door would be opened for the prosecution of unfounded claims . . . . In view of these considerations and of the specific references to accident, before cited, it is thought that the legislative purpose expressed by the whole act did not extend compensation to other than accidental injuries." We search the opinion in vain for any mention of "an accidental injury definite as to time and place." Nor does it appear that the language above quoted is of equal import. Since, however, the statute contemplates some "clearly defined event" it is necessary to consider how definitely in time and place must such an event be localized.

Obviously the question of place presents no difficulty in this case. The gas poisoning which opened the way for the tuberculosis infection unquestionably took place in the defendant's plant.

In considering the element of time, the question is, how 'accurately does the statute require that the time of the accident be fixed? The answer seems plain. It must be fixed with sufficient accuracy to permit the practical working of the statute, particularly those sections which provide for notice of the accident (*ss.* 15, 17) and define the manner in which and the time for which compensation shall be computed. *ss.* 22, 23, 24. These are the sections which in the *Guay* case were thought to compel the conclusion that a compensable injury must be accidental. All except the last have to do with the administration of the act and are important only for the purpose of facilitating its practical operation. They all refer specifically to the "accident" and not to the injury for which compensation is sought.

The most important is section 24, which provides that "in no event shall any compensation . . . extend over more than three hundred weeks from the date of the accident." The books are full of cases in which a considerable time elapses between a definitely localized accident and the resulting disability of the workman. Typical cases illustrating this situation are *Harvey Coal Corporation* v. *Pappas*, 230 Ky. 108 and *Bethlehem Steel Co.* v. *Traylor*, 158 Md. 116, both of which are reported in 73 A. L. R. 473, 479. Many other illustrative cases are to be found in the extended note to these decisions. 73 A. L. R. 488-554. In such cases the workman may, and frequently does, continue to perform his duties until disability arises. Clearly

compensation cannot be awarded until the ability to work is impaired and consequently the rule of reason requires that in this section the word "accident" must be construed to mean disability. Compensation for 300 weeks from the date of disability is permitted, but the statute does not require that notice of the date when disability commenced be given to the employer.

In sections 22 and 23, the date of the accident is of slight practical importance. These sections merely provide that the amount of compensation shall be based upon "the average earnings of the workman before the accident" and an approximate date of the accident is all that practical administration demands.

Section 15 provides that "notice of the accident" shall be given "as soon as practicable" and within six months of the happening thereof.

Section 17 requires that the notice shall state the "date and place of the accident."

The effect of these sections as a possible bar to recovery to an injured workman is, in practice, almost nullified by section 16, which provides that "no want, defect or inaccuracy of a notice shall be a bar to the maintenance of proceedings unless the employer proves that he is prejudiced by such want, defect or inaccuracy." Since neither want nor inaccuracy of notice is a bar as a matter of law to the maintenance of proceedings for compensation, and since "the object of the limitations, with respect to notice of the accident and the making of a claim for compensation, was not to create technical defences to otherwise valid claims" (*Mulhall* v. *Company*, 80 N. H. 194, 200), it seems plain that these sections offer no sound basis for the conclusion that only those occurrences of which notice, accurate as to time and place, can be given, are accidents within the meaning of the statute. This is the conclusion at which the English courts have finally arrived, as indicated by the following passages from the opinions in *Williams* v. *Guest*, [1926] 1 K. B. 497. *Pollock*, M. R. (*p.* 500): "In some cases which have attempted to deal with the very difficult question of what is an accident, a test has been suggested that if it is an accident within the meaning of the Act it ought to be such an accident as would enable notice of it to be given. That test breaks down, because we have in recent cases indicated that a man is not bound to give notice, or rather that he cannot give notice, as soon as practicable unless and until he has certain prognosis of the injury which he has received which would justify his belief that a serious disability, or a disability within the meaning of the Act was flowing from the accident." In the same case (*p.* 506) *Atkin*, L. J., says, "It

also has to be remembered that the cumulative effect of a series of accidents may still entitle the workman to compensation, as in *Selvage* v. *Burrell*, [1921] 1 K. B. 355, in which case the girl in the course of her employment contracted in the course of four months a series of small cuts or abrasions the effect of which was to cause an incapacity, and it was held that it was not necessary to be able to name and give evidence of the precise time at which the accident happened which had caused the incapacity."

Referring further to the fact that some judges had formerly thought it necessary "that you should be able to prove and give particulars of the precise day, time, and place at which the accident happened," the learned judge remarked, "I think that *Innes* or *Grant* v. *Kynoch* [1919] A. C. 765 disposed of that view."

In construing these sections also the rule of reason must be applied. Since the object of the notice is to give the employer a chance to investigate the claim made against him, a point which seems to have been assumed without argument in *Mulhall* v. *Company*, *supra*, 206, any notice which indicates with substantial accuracy the time within which the workman suffered from the negligent maintenance of a dangerous condition must be regarded as sufficient. Any other rule would lead to an extraordinary result in the present case. The master reports that there was "no complaint of lack of notice of plaintiff's injury." It would be a strange conclusion that in a case where no complaint is made in regard to notice, judgment must be given for the defendant because notice could not have been given if it had been wanted.

All this is in accord with the sensible conclusion of the English courts above referred to, that the impossibility of giving the precise date of an accident does not prevent an injured workman from recovering compensation under the act upon which the New Hampshire statute was modelled. *Innes* or *Grant* v. *Kynoch*, [1919] A. C. 765; *Selvage* v. *Burrell*, [1921] 1 K. B. 355; *Williams* v. *Guest* [1926] 1 K. B. 497.

With reference to the requirement that the date of the accident shall be stated in the notice, it should therefore be held that the act is satisfied "if, having regard to the nature of the particular injury alleged, the date of the occurrence of the accident is reasonably fixed so as to connect the injury with the accident." Lord *Wrenbury* in *Innes* or *Grant* v. *Kynoch*, *supra*.

Consonant with the conclusions reached above are the following well reasoned decisions in which the contention that to be accidental

an injury must result from a single sudden occurrence has been definitely rejected and the English cases have been followed. *Victory Sparkler Co.* v. *Franks*, 147 Md. 368; *Bethlehem Steel Co.* v. *Traylor*, 158 Md. 116; *Aldrich* v. *Dole*, 43 Ida. 30; *Sullivan Mining Co.* v. *Aschenbach*, 33 Fed. Rep. (2d) 1; *Seattle Can Co.* v. *Dept. of Labor &c*, 147 Wash. 303; *Pacific Emp. Ins. Co.* v. *Pillsbury*, 61 Fed. Rep. (2d) 101.

From the foregoing discussion it follows that the facts found by the master support his conclusion that the deceased suffered "an accidental injury arising out of and in the course of the employment," and there should accordingly be a decree for the plaintiff.