Coös,
June 28, 1928.

MARIE L. R. GUAY, *Adm'x*, *v.* BROWN COMPANY.

*Crawford D. Hening* (by brief and orally), for the plaintiff.

*Edmund Sullivan* (by brief and orally), for the defendant.

PEASLEE, C. J. This case involves the interpretation of the compensation provisions of Laws 1911, *c.* 163, *s.* 3 *et seq.*, known as the workmen's compensation act. As has been heretofore pointed out (*Mulhall* v. *Company*, 80 N. H. 194) this act constitutes a wide departure from common-law ideas of responsibility. It adopts to a certain extent the theory that industry should bear the burden of losses occasioned in the course of its prosecution. Upon the issue of the meaning of such legislation, common-law precedent furnishes little aid. Resort must be had to similar enactments, and the judicial interpretation and application thereof, for precedent or instructive reasoning.

The particular question here in issue concerns the nature of the injury to the workman which may be compensable under the act.

The language of the section imposing liability is "any injury arising out of and in the course of their employment." *s.* 3. So far as ascertained, there was no legislative precedent for this particular form of expression. Up to 1911, no statute upon this subject had been adopted in this country, except the New York act of 1910. N. Y. Laws 1910, *c.* 674. In the next year nearly a dozen states passed statutes upon the subject. 3 Bailey, Pers. Inj., 2279, 2422. While the New York act evidently suggested the form for other provisions of ours (*Abbott* v. *Company*, 80 N. H. 301) it has no relevancy to this provision, since it was a compulsory act and only dealt with injuries caused by an accident. The only precedent available on this subject in 1911 was the English act of 1897, as amended in 1906. That related to "personal injury by accident arising out of and in the course of" the employment. 6 Edw. VII, *c.* 58, *s.* 1 (1).

The significant change in our statute is the omission of the words "by accident." *Madden's Case*, 222 Mass. 487. If this were all the pertinent language in the act, the conclusion announced in the case just cited would be adopted. The scope of the act would be broader than that of the English precedent. But, unlike the Massachusetts act (Sts. 1911, *c.* 751), our statute, in other provisions relating to the administration of the law, contains frequent reference to the "accident." Notice of the accident, including date and place thereof (*s.* 5) and earnings before and after the accident (*s.* 6 (2)) are interspersed among other provisions speaking of the "injury."

This dubious form of expressing the legislative purpose was not peculiar to local legislation. It is found in other statutes enacted at about the same time. Criticism has quite properly been directed towards legislative correction, and affords little aid in the solution of the problem as it stands. 62 U. of Pa. Law Rev. 331; 64 *Ib.* 417; 65 *Ib.* 521.

Taking the statute as a whole, and so construing it that all parts will be given effect, the conclusion seems to follow that the thought to be expressed was that liability was imposed only for accidental injury. In no other way can the provisions of sections 5 and 6 above referred to be given any effect.

It is true that the omission of the words "by accident" in the section stating the liability is evidence tending strongly to the conclusion that other than accidental injuries were to be compensable. It is also evident that there is sound argument for the proposition that, if compensation is to be based upon causal effect of the employment, it should not be limited to cases where the result can be

classed as accidental. But it is also to be borne in mind that this was in the nature of an experiment in a new field of responsibility. Unless some clearly defined event marked the applicability of the compensation provision, a door would be open for the prosecution of unfounded claims. It was also a matter of doubt whether a greater extension of liability might not prove to be an excessive burden upon industry.

In view of these considerations, and of the specific references to accident, before cited, it is thought that the legislative purpose expressed by the whole act did not extend compensation to other than accidental injuries.

In *Brown* v. *Company*, 82 N. H. 78, the provision of section 3, that section 2 shall not apply to employers who accept the act, was overlooked, and the right to compensation was said to depend in part upon the provisions of section 2. The reference to section 2 was merely incidental. The only question there involved was whether the employee was within the act, under the provisions of section 1, and there was no occasion to consider the nature of the injury relied upon. The present conclusion that section 3 gives compensation for accidental injuries only, makes it immaterial to the purposes of this case whether section 2 applies or not.

As to what may be deemed an accidental injury, the English precedents are somewhat in conflict (25 Harv. Law Rev. 343), but their general purport is well summed up in a recent work.

"It should be noted that the expression is not '*by an accident*.' This distinction was pointed out . . . in *Warner* v. *Couchman.* [5 B. W. C. C. 177]. The term has a much wider signification, and includes (I) personal injury sustained under circumstances which can be referred to as 'an accident' *e. g.* by indiscriminate stone-throwing (see *Challis* v. *L. & S. W. Railway Co.* [1905, 2 K. B. 154]), and (II) cases in which, though there be no accident, the results of the occurrence may be so unexpected as to be fairly considered as being accidental, *e. g.* over-exertion or strain in the ordinary course of work causing rupture or some similar injury (see *Fenton* v. *Thorley, supra*)." Slesser & Henderson, Industrial Law, pp. 54, 55.

Perforation of a diseased intestine by slight pressure which would be harmless to one in sound health (*Woods* v. *Wilson*, 84 L. J. K. B. 1067), breaking an aneurism in the ordinary course of work (*Clover Clayton & Company, Limited*, v. *Hughes*, [1910] A. C. 242), rupture caused by ordinary exertion (*Fenton* v. *Thorley*, [1903] A. C. 443) and pneumonia brought on by exposure (*Coyle* v. *John Watson*,

*Limited,* [1915] A. C. 1) were all decided to be personal injuries caused by accident. *Madden's Case,* 222 Mass. 487, 493, 494.

The English definition of accident as used in this act has already been adopted in this state. "As these acts are construed, any untoward and unexpected event is an accident. *Fenton* v. *Thorley & Co.,* [1903] A. C. 443. That is, 'accident' is used in its popular sense." *Boody* v. *Company,* 77 N. H. 208, 212, 213.

The cases in this country, under similar statutory provisions, are in the main in harmony with the English rule heretofore quoted. *Patrick* v. *Ham,* 119 Me. 510; *Brown's Case,* 123 Me. 424; *Winter* v. *Company,* 88 N. J. Law 40; *Tracey* v. *Company,* 270 Pa. St. 65; *Gilliland* v. *Company,* 104 Kan. 771; *Larke* v. *Insurance Co.,* 90 Conn. 303; *Jordan* v. *Company,* 230 N. Y. 522; *Zappala* v. *Commission,* 82 Wash. 314, 316; *Poccardi* v. *Commission,* 75 W. Va. 542.

"In the majority of jurisdictions, and we think by weight of authority, it has been held that the phraseology of the compensation acts is broad enough to include all non-occupational diseases, although not preceded by traumatic causes provided it is clearly shown that the disease arose out of and in the course of the employment and was unusual, undesigned, unexpected and sudden." *Brodin's Case,* 124 Me. 162. The contrary holding in Michigan (*Stombaugh* v. *Company,* 198 Mich. 445) is clearly against the weight of the authorities.

As stated in some of the cases, it is no less an accident when a man suddenly breaks down than when there is a like mishap to the machine he is operating. Nor is it a defence that the workman had some predisposing physical weakness, but for which he would not have broken down. If the employment was the cause of the collapse, in the sense that but for the work he was doing it would not have occurred when it did, the injury arises out of the employment. *Patrick* v. *Ham, supra; Brightman's Case,* 220 Mass. 17; *Springfield &c. Co.* v. *Commission,* 300 Ill. 28; *Winter* v. *Company,* 88 N. J. Law, 40; *Gilliland* v. *Company,* 104 Kan. 771; *Haskell &c. Co.* v. *Brown,* 67 Ind. App. 178; *F. H. Gilcrest &c. Co.* v. *Rengler,* 109 Neb. 246; *Beck Mining Co.* v. *Commission,* 88 Okla. 34; *Clover &c. Co.* v. *Hughes,* [1910] A. C. 242. Other authorities are collected in 28 A. L. R. 200, *note.*

If the design of the statute were merely to impose a new rule of liability for fault, there would be force in the contention that where unusual physical weakness of the workman, not known to or reasonably discoverable by the employer, is a contributing cause for the

injury, there should be no recovery. But the act has a very different object in view. Compensation is not dependent upon any fault of the employer; but is awarded whenever the fortuitous event overtakes the workman in the course of and out of his employment. Its object is alleviation of misfortune and not compensation for a legal wrong.

The petition states a case. It alleges a sudden collapse and immediately ensuing death, brought on by reason of the effect of the decedent's hard labor upon his weakened heart. This sets out an accidental injury arising out of and in the course of his employment.

Much of the defendant's argument is devoted to a question of fact. It denies the causal effect of the decedent's employment. This of course remains to be proved. The petition alleges that it was causal, and that is sufficient upon demurrer. Upon a trial of the facts the question will be determined upon the principles laid down in *Madden's Case*, 222 Mass. 487, 495. "Not every diseased person suffering a misfortune while at work for a subscriber is entitled to compensation. The relief is so new that the tendency may be to inquire only as to the employment and the injury and to assume that these two factors constitute ground for compensation. But the essential connecting link of direct causal connection between the personal injury and the employment must be established before the act becomes operative. The personal injury must be the result of the employment and flow from it as the inducing proximate cause."

*Demurrer overruled.*

Snow, J., was absent: the others concurred.