McGREGOR & PICKETT v. ARRINGTON.

4-7178                                    175 S. W. 2d 210

Opinion delivered November 15, 1943.

*Buzbee, Harrison & Wright,* for appellant.

*Y. W. Etheridge,* for appellee.

SMITH, J. H. L. Arrington died while engaged in his employment as a carpenter. He was not subjected to an examination as to his physical fitness when he entered that employment.

The Arkansas Workmen's Compensation Commission held that the death occurred under circumstances entitling his widow and children to the benefits of the Workmen's Compensation Act (Act 319, Acts 1939, pp. 777 *et seq.*), and made an award against appellants, one as employer and the other as insurance carrier.

This award was made by two members of the Commission, from which an appeal was prosecuted to the circuit court, where, upon motion of appellants, the cause was remanded for further hearing before all of the Commissioners.

That hearing was had, and the award was renewed, from which order an appeal was prosecuted to the circuit court, where the award was affirmed, and from that judgment is this appeal.

The decision upon this appeal depends upon the construction to be given paragraph "f" of § 2 of the Compensation Act, which reads as follows: "(f) 'Injury' and 'personal injury' shall mean: Accidental injury or death arising out of and in the course of employment, and such occupational disease or occupational infection as arises naturally out of such employment or

as naturally and unavoidably results from such accidental injury as hereinafter defined.''

Opposing counsel have cited many cases from other jurisdictions, which are all in point, but the task would be interminable to review and distinguish them. We find it unnecessary to do this, as the opinions of this court, all recently delivered, announced the principles which control here.

It may first be said that the conflicts in the testimony are slight, and unimportant, but if the facts were otherwise, we would not disturb the findings of the Commissioners, if there is substantial testimony to support their findings. *Baker* v. *Silaz,* 205 Ark. 1069, 176 S. W. 2d 419.

The deceased had, for some years, been afflicted with heart trouble, and he carried a bottle of ammonia to be used as emergency required. His doctor testified: ''For the last year it seemed like he had gotten along better than usual. He hadn't had any bad attacks like he used to have and I told him it looked like he was doing some better. . . . Apparently, so far as I could tell, it didn't seem like his heart murmur was so loud as it had been and he had been working more regularly without an attack.''

The deceased died August 8, 1941, at which time the weather was extremely hot. He was employed on an out-of-doors job, and on that account the men did not work during the heat of the day, but worked early in the morning, and late in the afternoon, and at night. Deceased left home, according to the testimony of his widow, about 3:00 a. m., on the morning of his death. He had worked until 10 p. m. the day before. Deceased's health appeared to be improving during the last six or eight months of his life. He worked regularly and seemed to be feeling all right, so his widow testified, except that he was not getting the necessary rest.

Deceased died about 6:15 a. m., and just prior to his death he and his partner carried a plank, 2x12 and 16 feet long, and weighing from 100 to 150 pounds, across

the building to the place where it was to be put in position. The plank was deposited on the floor, and deceased was tugging at one end of it to get it in place, slipping the board towards his partner, who was stooping over and watching to see when the plank was in position to be nailed. It is suggested, and appears highly probable, that more strength and effort was required to slide the plank into place than would have been required to lift or carry it. While performing this service, deceased said to his partner, "Boy, I'm about to pass out." He slumped down and was dead by the time his body could be lowered from the scaffolding where he was at work to the ground.

Upon this, and other testimony, which was substantially to the same effect, the Commission made the finding that, "In our opinion the evidence shows that the decedent, while performing his duties as an employee for respondent employer, put forth an effort that was greater than his heart, already weakened by disease and no doubt fatigued by long hours of labor, could bear. Thus, the decedent suffered an exertion, the accidental and unexpected result of which was an injury to his heart, causing his death. We, therefore, hold that decedent's death resulted from an accidental injury arising out of and in the course of employment."

We think the testimony fully sustains this finding, and, if so, a compensable case was made.

Our recent case of *Hunter* v. *Summerville*, 205 Ark. 463, 169 S. W. 2d 579, reviewed a number of cases on this subject, and we there quoted as a proper construction of the statute the following statement of law appearing in the case of *Cudahy Packing Co.* v. *Parramore*, 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 34, 30 A. L. R. 532: "The liability is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured. And this is not to impose liability upon one person for an injury sustained by another with which the former has no connection; but it is to say, that it is enough if there be a causal connection between the injury and the business

in which he employs the latter—a connection substantially contributory, though it need not be the sole or proximate cause."

It may be admitted that deceased would not have died if he had not had heart trouble, but, even so, it was shown that his labor in the course of his employment precipitated his trouble, and this employment was "a connection substantially contributory" to his death.

In a case even more recent, *Herron Lumber Co.* v. *Neal*, 205 Ark. 1093, 172 S. W. 2d 252, the employee was afflicted with a gastric ulcer, which was ruptured in the course of his employment. He was attempting to turn a log with a cant hook which was jerked out of his hand, and on the following day he died from peritonitis which his physician testified was caused by the rupture of the ulcer. It was insisted that the employee had not sustained an accidental injury in the course of his employment, but in answer to that contention it was there said: "It is not argued by appellants that the fact that Neal had a gastric ulcer which might rupture at any time precluded an allowance of the claim, nor was such a defense available. 'Injury from strain or overexertion due to a physical condition predisposing the employee to injury is an injury within the terms of the various workmen's compensation acts . . . ' 71 C. J., p. 607."

Other recent cases on the subject are: *Birchett* v. *Tuf-Nut Garment Mfg. Co.*, 205 Ark. 483, 169 S. W. 2d 574; *J. L. Williams & Sons, Inc.,* v. *Smith*, 205 Ark. 604, 170 S. W. 2d 82; *Gwin* v. *Vestal*, 205 Ark. 742, 170 S. W. 2d 598; *Solid Steel Scissors Co.* v. *Kennedy*, 205 Ark. 958, 171 S. W. 2d 929.

In the conclusions of law filed by the Commission, it is said that: "An excellent review of English and American heart attack cases is given in *Guay* v. *Brown Co.*, 83 N. H. 392, 142 Atl. 697, 60 A. L. R. 1284," and other cases were also cited.

In the Guay case, which was heard on demurrer, the petition before the Commission alleged a sudden collapse and the immediately ensuing death, brought on by reason

of the effect of the decedent's hard labor upon his weakened heart. The court on appeal said, "This sets out an accidental injury arising out of and in the course of his employment."

In so holding it was said: "As stated in some of the cases, it is no less an accident when a man suddenly breaks down than when there is a like mishap to the machine he is operating. Nor is it a defense that the workman had some predisposing physical weakness but for which he would not have broken down. If the employment was the cause of the collapse, in the sense that but for the work he was doing it would not have occurred when it did, the injury arises out of the employment."

The court proceeded to say: "If the design of the statute were merely to impose a new rule of liability for fault, there would be force in the contention that, where unusual physical weakness of the workman, not known to or reasonably discoverable by the employer, is a contributing cause for the injury, there should be no recovery. But the act has a very different object in view. Compensation is not dependent upon any fault of the employer, but is awarded whenever the fortuitous event overtakes the workman in the course of and out of his employment. Its object is alleviation of misfortune and not compensation for a legal wrong."

We conclude that the judgment of the court below is correct, and it is, therefore, affirmed.