FRANK LYON COMPANY *v.* SCOTT.

4-8831                                         220 S. W. 2d 128

Opinion delivered May 9, 1949.

*John M. Lofton, Jr.,* and *Owens, Ehrman & McHaney,* for appellant.

*Buzbee, Harrison & Wright,* for appellee.

GEORGE ROSE SMITH, J. The circuit court affirmed a Workmen's Compensation Commission order awarding compensation to the appellee as the widow of Robert H. Scott. The Commission found that Scott's exertions in carrying a heavy tool kit and welding torch to the second floor of his employer's place of business had caused hemorrhages that led to his death on May 20, 1947. The appellants—Scott's employer and insurance carrier—contend that there was not sufficient competent evidence to sustain the award.

We think the finding that Scott did carry the tools upstairs is supported by substantial evidence. Scott was a refrigerator repairman whose duties included working at the plant and the making of outside service calls. On the morning of April 28 Scott's immediate superior, B. J. Roberts, told him which work was urgent. Scott replied that he would have to get his tools and went downstairs. The weight of the tool kit and welding unit is about one hundred pounds. Ordinarily Scott would have used the elevator, but it was not in operation that morning. Roberts did not actually see Scott ascend the stairs, but he testified that he heard the tool kit rattling as Scott made the ascent. There was also evidence that the tools were customarily kept in the truck assigned to Scott and that they were found at his place of work on the second floor shortly after his seizure. This testimony was corroborated by appellee's statement that her husband later told her about carrying the tools upstairs. See Ark. Stats. (1947), § 81-1327. This evidence is sufficient to support the Commission's conclusion on this disputed point.

About ten minutes after Scott returned to the second story Roberts heard a noise and discovered Scott lying on the floor in a semi-conscious condition. He was taken to the hospital and remained there two days, his malady being diagnosed as a subarachnoid hemorrhage. After his discharge from the hospital Scott remained at home until he suffered a second attack on May 14. He was returned to the hospital and died there on May 20. An autopsy revealed a small subarachnoid hemorrhage, two or three weeks old, and a massive cerebral hemorrhage to which death was attributed. It was not possible to tell if the hemorrhage of May 14 had continued until Scott's death or if there had been a third hemorrhage on May 20.

It cannot be said that there is no substantial evidence to show that the hemorrhages were caused in part by Scott's activity in carrying the tools. The three doctors who testified agreed that Scott had a congenital weakness in certain blood vessels and that a hemorrhage would have occurred eventually in any event. In view of

the congenital defects it might have happened spontaneously, even while the patient was lying in bed asleep. But all three physicians stated that the effort expended in climbing the steps with the tools could have precipitated the series of hemorrhages, and one of them was of the opinion that this exertion did in fact cause the hemorrhages. This testimony brings the case within our holding that compensation is payable when the employee's work so affects an existing condition that injury or death occurs sooner than would otherwise have been the case. *McGregor & Pickett* v. *Arrington,* 206 Ark. 921, 175 S. W. 2d 210.

Affirmed.