BAKER *v.* SLAUGHTER.

4-9730                                        248 S. W. 2d 106

Opinion delivered April 7, 1952.

*Wright, Harrison, Lindsey & Upton* and *Orville Ben Core,* for appellant.

*Etheridge & Sawyer,* for appellee.

GRIFFIN SMITH, Chief Justice. Workmen's Compensation Commission, in a death claim, determined that the decedent had not sustained an accidental injury arising out of and in the course of his employment and declined to make an award. This occurred after a single commissioner had approved the demand, but the approving commissioner joined the other two in the final action. Circuit court reversed, believing there was no substantial evidence to support the commission's order.

W. J. Slaughter's death occurred Tuesday morning, April 18, 1950. The employer's son, Macel Baker, a civil engineer, was temporarily acting as foreman in respect of work engaged in by a crew of men who were transported fifteen or sixteen miles to woodlands where trees were being girdled. Girdling involved the use of a three-pound axe in cutting around the tree. In width

the gash would be about three inches, but deep enough to go through the bark and penetrate the sapwood an estimated inch and a half. The purpose was to deaden the trees. Slaughter had been employed by Baker for six months.

No one was present when Slaughter died. Macel Baker testified that in entering the woodland Slaughter observed three small trees that were supposed to have been cut, but had been overlooked. Slaughter went to cut them while other members of the crew proceeded farther into the woods. Thirty or forty minutes later Baker returned to the point where the saplings had been observed and found Slaughter lying on his axe, dead. The body was three or four steps from the tree stumps. Baker thought that normally five minutes would have been required to do the work Slaughter had indicated. The witness did not observe any nearby trees that had been girdled, and inferentially the only work done by Slaughter was that required in the simple task discussed. The body was found between 9:30 and 10:15 a. m.

It is not disputed that Slaughter was in a critical condition. He suffered from heart disease and anemia to such an extent that his attending physician, Dr. J. T. Woods, had cautioned against work. Although definite evidence of cardiac disturbances had existed for several years, Slaughter's condition had steadily deteriorated. He had grown so much worse that during the six months preceding death Dr. Woods was apprehensive. When the illness first came to the doctor's attention three or four years before 1950 the patient was not advised against work; but, said Dr. Woods, "during the last six or eight months of his life I had advised [that] he should not do any physical labor—any manual labor or [engage in] any physical exertion."

When Dr. Woods was asked for his opinion regarding any connection between the labor Slaughter was doing and his death, the answer was:

"I can state it this way: "If he had been at home in bed and hadn't been doing any physical exercise—any work—he probably would have been living today.

But anybody knows that if you have a bad heart and get out and run 45 or 50 yards, you are likely to fall dead. Anything like climbing stairs, or any physical exercise, [these things are likely to produce death"].

Dr. Woods was then asked whether, in his opinion, the kind of work Slaughter was doing would have the effect of aggravating his condition. The answer was: "That is hard work—a man getting around through the woods and just girdling timber. I have never done any of it." The next definite answer by Dr. Woods was in response to a question predicated upon an assumed fact, but apparently a misconstruction of testimony given by Macel Baker. This question was: "You think the fact that Mr. Slaughter was, at the time of his death, girdling trees—that is to say, cutting trees approximately two to three inches deep with a swing of the axe—would that have anything to do with aggravating the condition he had and immediately causing death?" Answer: "That is quite a lot of exercise, and any kind of exercise might precipitate a heart attack." [The witness Baker had testified that the trees were cut through the bark to a depth of an inch and a half, but effect of the testimony seems to be that the *width* of the cut, as distinguished from the *depth*, was about three inches].

Dr. Woods had seen Slaughter on Saturday before he died the following Tuesday. At that time he advised against work and had volunteered to go with the patient to Hamburg for the purpose of procuring relief grants through the state welfare department; but, [said the doctor], Slaughter was a fellow who laughed it off and said, "Doc, you know there isn't much in that."

When asked by one of the commissioners whether Slaughter's life was in danger, Dr. Woods replied: "Yes, it was, more or less; but any physical exercise would, of course, increase that danger; . . . but if he had stayed at home [Monday through Tuesday death probably would not have occurred at that time], but if the *next* day he went to work, he probably would have died just the same. His heart was in such a condition that

any physical exercise would precipitate such a condition that it would take him right off.''

*The Applicable Law.*—The Compensation Act, Ark. Stat's, § 81-1302, carries definitions intended as guides to the legislative intent. Subdivision 4(d) construes ''injury'' to mean *only* accidental injury arising out of and in the course of employment. Subdivision (g) circumscribes the term ''death''—''only death resulting from such injury, as defined in paragraph (d) of this section.''

The statute can have no meaning other than that in a death case there must have been an accidental injury before compensation is allowable. The difficulty is not with the statute, but in determining what *is,* and what is *not*, an accident. We have consistently held that the law is to be liberally construed to effectuate its beneficent purposes, but we have said that insurance was not contemplated, and the mere circumstance that an employe becomes incapacitated or dies is insufficient, standing alone, to justify an award. The fact that common law and statutory rights to sue the employer for negligent conduct were taken from the worker and a schedule of benefits substituted has caused courts to lean as far in favor of compensation as reasonable construction of law and facts would permit. In doing this sentences have appeared in opinions which, when taken from the factual context, would seem to support a policy of approving payment where by any key to meaning it can be said that some physical factor, when imposed upon a pre-existing condition, tilted the balance to such an extent that disability or death resulted. Most of these decisions were carefully thought out for the purpose of preventing purely technical defenses which if cumulatively successful would have impaired the humanitarian purposes back of compensation.

Some of the cases falling within the class just mentioned may appropriately be noted. *McGregor & Pickett* v. *Arrington*, 206 Ark. 921, 175 S. W. 2d 210, is to the point. The decedent suffered from a heart ailment shortly after assisting an employe in carrying a plank weighing from 100 to 150 pounds from one position to another

in a building where he was working. The commission's finding was that Arrington "put forth an effort that was greater than his heart, already weakened by disease and no doubt fatigued by long hours of labor, could bear. Thus the decedent suffered an exertion, the accidental and unexpected result of which was an injury to his heart, causing his death." This court's opinion called attention to *Hunter* v. *Summerville*, 205 Ark. 463, 169 S. W. 2d 579. The *Hunter* case cited *Cudahy Packing Co.* v. *Parramore*, 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 66, 30 A. L. R. 532. There the court said that it was enough if there be a causal connection between the injury and the business in which the worker is employed—a connection substantially contributory, though it need not be the sole or proximate cause. There is a citation to *Guay* v. *Brown Co.*, 83 N. H. 392, 142 Atl. 697, 60 A. L. R. 1284, where it was said that it is no less an accident when a man suddenly breaks down than when there is a like mishap to the machine he is operating . . . If the employment was the cause of the collapse, in the sense that but for the work he was doing it would not have occurred when it did, the injury arises out of the employment.

It should be kept in mind that in the Arrington case the commission found that there had been an accidental injury. The attorney representing the claimant in that case is the same who appears for Mrs. Slaughter in this appeal. In another case we said it was sufficient if the accident, coupled with a non-disabling malady, produced disability which would not have occurred at that time but for the trauma. *J. L. Williams & Sons, Inc.*, v. *Moore*, 206 Ark. 766, 177 S. W. 2d 761. But there, unlike the facts here, there was an accident. The worker was struck in the back by a piece of lumber with the result that a pre-existing tuberculous condition was intensified.

*Harding Glass Co.* v. *Albertson*, 208 Ark. 866, 187 S. W. 2d 961, emphasizes the attitude of Arkansas courts in deferring to factual findings of the commission. Albertson suffered from a heart ailment, but the accidental injury justifying the award was heat prostration. As the

opinion points out, most of the American and English courts hold that sunstroke or disabling prostration from heat is an accident, and if death or disability results it is no defense that the subject was not physically sound. The question is whether the accident, as so defined, provoked or aggravated a diseased body to such an extent that death or disability came sooner than would have been the case but for this contributing cause connected with the employment.

By italicizing and removing from its sequence "whatever the degree of exercise or condition of health," found in the Albertson case as a quotation from *Clover, Clayton & Co.* v. *Hughes* (1910), A. C. 242, the opinion would be highly persuasive of appellee's position. But the reference is but an excerpt from Schneider on Workmen's Compensation, v. 4, § 1328, 3rd ed., beginning at page 1328. In the Albertson decision, 208 Ark. 872 of the Arkansas Reports, a deletion is shown, the omitted matter having been regarded as unimportant in its application to a case where the commission had determined that an accident occurred, and in circumstances where the circuit court and this court on appeals were in accord with the commission.

But omitted expressions found in Schneider's text are applicable to the case at bar. "Where," says the author, "the cerebral hemorrhage is due solely to the natural progress of the disease or such progress causes dizziness and a fall and the fall causes the hemorrhage, then it is the disease and not the accident or fall that is the producing cause of the disability and such disability is not compensable. Proof of hard labor is not in itself proof of over-exertion sufficient to sustain an award of compensable accident and proof of cerebral hemorrhage does not in itself prove a compensable accident." Additional comments from Schneider are found in the margin.[1]

---

[1] Schneider says: "Though some courts, without saying so, specifically take the position that virtually any exertion, whether customary, or what may not be termed over-exertion, is nevertheless over-exertion to one suffering from infirmities which make him susceptible to cerebral hemorrhage, and therefore he has sustained an accident from doing the same work which for his more healthy coworkers holds no potential danger. Such interpretation of the term accidental injury has been referred to by some courts as making of the compensation acts health

Our attention is called to the language in *Herron Lumber Company* v. *Neal*, 205 Ark. 1093, 172 S. W. 2d 252: "Injury from strain or over-exertion due to a physical condition predisposing the employe to injury is an injury within the terms of the various workmen's compensation acts." (Citing 71 C. J., p. 607). In that case, however, the commission, and the circuit court on appeal, had found that there was an accidental injury when the handle of a cant hook was jerked from the laborer's hand and presumptively ruptured a gastric ulcer.[2]

The cases, and others to which attention is called, are listed in *Triebsch* v. *Athletic Mining & Smelting Co.*, 218 Ark. 379, 237 S. W. 2d 26. The Triebsch decision was by a divided court, but the majority found that the uncontradicted evidence disclosed an accidental injury, *i. e.*, the claimant, as an incident to his employment, was subjected to "an increased work load on the night in question, with increased smoke and fumes." Effect of the opinion is to say that where there is an existing ailment at the time an overtaxing effort is required "to accomplish the work load under the conditions existing," a worker who collapses or sustains disabling impairment has suffered an accidental injury within the meaning of the compensation law.

*Conclusions.*—We are unable to draw from Dr. Woods' testimony, and from the facts attending Slaughter's activities and his death, any inference other than that he was pursuing, in the normal and usual way, the work he had been performing for some time. In discharging these duties there was no untoward incident or

insurance rather than industrial injury acts. That they are industrial injury acts is generally accepted as the legislative intent. It is at this point that the distinction between accident and health protection becomes somewhat shadowy and difficult; but courts and commissions, in their zeal to follow the usual statutory admonition of liberal construction, to the end that the worker may be served, should not overstep the bounds of legislative intent and make compensation laws health insurance acts and consequently of their decisions judicial legislation."

[2] Dissents from the Herron Lumber Company—Neal case were noted by the Chief Justice and Mr. Justice Knox. In the light of later decisions construing the compensation Act with extreme liberality, the dissent there by the writer of this opinion is not harmonious with broader views that have been taken; and today, in the circumstances of that case, I would agree with the majority.

extraordinary occurrence. It is true that the attending physician thought it probable that life would have been prolonged had the patient remained in bed. To the extent that the usual duties of employment were being pursued in a normal way and that death occurred by reason of the physical effort thus put forth, the end was no doubt hastened; but the activities were in no sense unusual or alien to the employment; indeed, the knowledge we have as to forest work might easily suggest that something less than average activities was being engaged in so far as use of the axe was involved.

Although the tragedies of life are not confined entirely to capable laborers such as the decedent is shown to have been—that is, confined to men whose economic situation is such that in spite of tremendous risk they feel compelled to disregard the advice of medical men in order to meet the paramount responsibility of providing for dependents—we do know from common knowledge that the loss of employment time by day laborers not infrequently means the difference between economic sufficiency and actual want. This problem was no doubt the grueling motivation back of Slaughter's determination to remain active irrespective of consequences to himself. It is a form of courage that steels men to struggle in a daring effort to attain the final mile, leaving events to chance and destiny. But, unfortunately for dependents whose subsistence is so precariously poised, public Acts cannot be judicially supplemented or amended to meet humanitarian needs; nor can words having a definite legislative meaning be read out of the compensation law in instances where one's innate impulse is to project liberality of construction beyond the uttermost of reason.

We are constrained, therefore, to hold that the appeal before us does not disclose error on the part of the commission. Reversed, with directions that the circuit court judgment be revised to show affirmance of the factual findings.

Justices MILLWEE and WARD dissent.

ED. F. McFADDIN, Justice (Concurring). In *Farmer* v. *L. H. Knight Co.,* No. 9731, this day decided, *infra* p. 333,

248 S. W. 2d 111, I have written a concurring opinion, which states my views, not only in that case, but also in this one, and in other cases involving the collapse of a worker suffering with a bad heart. For the reasons stated in that concurring opinion, I also concur in this case.