FARMER *v.* L. H. KNIGHT COMPANY.

4-9731                                        248 S. W. 2d 111

Opinion delivered April 7, 1952.

*Ovid T. Switzer,* for appellant.

*Malcolm M. Gannaway* and *James B. Gannaway,* for appellee.

HOLT, J. Appellant's husband, Dan M. Farmer, a carpenter by trade, 56 years of age, on February 14, 1949, was employed as a carpenter on a high school building in Crossett by L. H. Knight Co., appellee. Farmer had

been working on this job for about one week with another carpenter of appellee, John Midgett, and after having worked for about seven hours on the 14th, a timber 4"x10"x16', weighing from 125 to 150 pounds, was placed by two helpers on horses, on a scaffold about seven feet from the ground. While lifting one end of this timber about one foot, Farmer suddenly collapsed, fell from the scaffold to the ground and died almost immediately. Midgett and another carpenter, Mr. Horn, were the only witnesses with Farmer when he fell.

Mr. Midgett, who was assisting Farmer and lifting the other end of the timber, testified: "Q. How high did he have to lift the piece of timber after he got it over the wall? A. Oh! I would say now if it was on the scaffold about two feet, but he had it up to his knees to start with. I would say 10, maybe a foot high; not over that. Q. What kind of position was he in? A. Well, he was just standing up like a man would picking up anything. Q. Have to bend over to lift it, put it in? A. Yeah! I guess he did have to kinda get down a little. Q. You are—saying you are in that position lifting the board of that kind at the place, would you be in a strain? A. No, no, if you didn't go no higher than that you wouldn't. You are right even with your body; waist high about that. * * * Q. Now, you are how large, how much do you weigh? A. I weigh 145. Q. Was it a very difficult thing for you to handle one end of a four by ten by sixteen? A. No, sir. Q. It wasn't heavy work to you? A. No, it wasn't too heavy for me. * * * Q. February 14 was on Monday? A. That's right; it was on Monday he went to work there a week—he had been there since Monday. Q. And you wouldn't say this was any heavier work than you had done all the week before that? A. No, sir, I wouldn't. Q. This was the second Monday? A. Yes, sir. Q. That he worked—just one week? A. Yes sir. Q. And you had never heard him complain of either feeling bad or that the work was heavy? A. Never heard him say nothing; no, sir."

The Commission summarized Mr. Midgett's testimony: "John Midgett testified he was an employee of L. H. Knight on February 14, 1949, and was working on

the job when Mr. Farmer went to work about a week prior to February 14, 1949; that Mr. Farmer died about 3:45 p. m. on February 14, 1949; that prior to his death he had been working with him on a scaffold which was located about seven feet above the ground; that they had sawhorses on the scaffold and the lumber was placed there while holes were being drilled in it with an electric drill; that just before Mr. Farmer died he (Midgett) Mr. Horn and Mr. Farmer slid a piece of lumber down off the sawhorse, and he and Mr. Farmer then placed the piece of lumber down on the beam where it was to be bolted to the beam; that he then turned around and looked for the helper; that when he looked back Mr. Farmer was falling off the scaffold; that he just rolled off and fell on the ground, landing on his back; that the ground was soft; that he got to him immediately and poured water on him trying to bring him to; that Mr. Farmer had turned black and blue by this time, so he got some more men and laid Mr. Farmer on the floor; that the work Mr. Farmer was doing that day was no more strenuous than what they had been doing all week.''

It appears undisputed that Mr. Farmer had been suffering from hypertension, accelerated heart, other symptoms of a cardiac condition, and a diseased heart as far back as 1947.

Dr. McMillian, on behalf of appellee, testified that in his opinion, Mr. Farmer's death was caused either by massive cerebral hemorrhage or coronary occlusion and that the work he was doing had no bearing or connection with his death.

The full Commission denied appellant's claim for compensation and on appeal to the Ashley Circuit Court, the action of the Commission was affirmed. From the judgment is this appeal.

Appellant contends that there was no substantial evidence on which the Commission could have based the order denying compensation and says: ''The sole question is whether death was due to accidental injuries which arose out of, and in the course of, his employment.''

We have consistently, through a long line of decisions, adhered to the following rules in construing our "Workmen's Compensation Law." The findings of facts by the Commission must be accorded the same force and effect as the verdict of a jury. In other words, if there is any competent, substantial evidence to support the Commission's findings, we must affirm. The law does not call for general accident insurance, *Burchett* v. *Tuf-Nut Garment Manufacturing Company,* 205 Ark. 483, 169 S. W. 2d 574.

The burden of proof is on the claimant to show that injury or death of the employee was the result of an accidental injury that not only arose in the course of the employment, but in addition, that it grew out of, or resulted from, the employment. An accidental injury may come about by evidence of some unusual strain, effort, or fortuitous happening which might bring about death or injury to the employee either as a direct cause, or by the aggravation of a pre-existing diseased condition from which the employee was suffering at the time of the injury or death. *McGregor & Pickett* v. *Arrington,* 206 Ark. 921, 175 S. W. 2d 210. See, also, Schneider on Workmen's Compensation Text, Vol. 4, § 1328, page 543, which is quoted in full in *Baker, et al.* v. *Slaughter, ante* p. 325, 248 S. W. 2d 106, an opinion of this date.

Since the effective date of the initiated Workmen's Compensation Law (Act 4 of 1948, adopted by the people November 2, 1948, Acts 1949, p. 1420), December 3, 1948, there is no *prima facie* presumption that the claim comes within the provisions of the law.

The Commission made these findings: "The testimony of Clifford L. Horn and John Midgett, who were working with the decedent at the time of his collapse, was to the effect that the work being done by the decedent at the time of his collapse was of no more strenuous nature than that which he had been doing for days prior to his collapse. We do not think the evidence discloses any unusual effort or strain or any fortuitous happening that would constitute an accidental injury and which brought about the death of the decedent, either as a

direct cause or by the aggravation of the pre-existing diseased condition from which the decedent suffered.''

While the evidence is conflicting, we cannot say that there was no substantial evidence, as a matter of law, to support the Commission's findings, and the judgment of the Circuit Court on appeal. It is not our function to weigh the evidence in these compensation cases. That responsibility had been left to the Commission by the Legislature. *Lundell* v. *Walker,* 204 Ark. 871, 165 S. W. 2d 600; *H. C. Price Construction Company* v. *Southern,* 216 Ark. 113, 224 S. W. 2d 358 and *Ledbetter* v. *Adams,* 217 Ark. 329, 230 S. W. 2d 21.

We recognize that when one is suffering from an admitted pre-existing diseased heart condition, as was the decedent here, death often happens without any intervening trauma or injury, and may come on under ordinary physical activation or even while resting or asleep.

The judgment is affirmed.

Justices McFADDIN and ROBINSON concur.

Justices MILLWEE and WARD dissent.

ED. F. McFADDIN, Justice (concurring). Under our statutes and holdings, this Court should affirm the Commission in the case at bar, since the Commission's findings have the same force and effect as a jury verdict. But the purpose of this concurring opinion is to attempt to clarify some confusion which I think has slipped into some of our Workmen's Compensation cases, involving the collapse of a worker.

There seems to be an impression that the Workmen's Compensation Commission can allow a recovery in the case of a collapsed worker only when there is a strain or burden on the worker, more than the usual work for which he is employed. That impression is entirely erroneous, as I see the cases. The confusion seems to result from the failure to distinguish between two groups of cases: (1) In the first group are those cases in which the Commission allowed recovery for a collapsed worker, and we affirmed the Commission; and (2) in the second group

are those cases in which the Commission has refused recovery for a collapsed worker, and we reversed the Commission.

In the first group are such cases as *McGregor* v. *Arrington,* 206 Ark. 921, 175 S. W. 2d 210; *Harding Glass Co.* v. *Albertson,* 208 Ark. 866, 187 S. W. 2d 961; *Sturgis Bros.* v. *Mays,* 208 Ark. 1017, 188 S. W. 2d 629; *Frank Lyon Co.* v. *Scott,* 215 Ark. 274, 220 S. W. 2d 128; and *Quality Excelsior Coal Co.* v. *Maestri,* 215 Ark. 501, 221 S. W. 2d 38. In the second group are such cases as *Triebsch* v. *Athletic Mining & Smelting Co.,* 218 Ark. 379, 237 S. W. 2d 26; and *Scobey* v. *Southern Lumber Co.,* 218 Ark. 671, 238 S. W. 2d 640, 243 S. W. 2d 754.

(1) Now as to the first group of cases: *i. e.,* where the Commission allowed recovery and we affirmed,—a study shows that the Commission allowed recovery in several of these cases, in which the evidence disclosed that the collapsed worker *did not* have any extra work load or strain greater than the normal work load. It was not work *unusual to the vocation* that was the key to the recovery; rather it was work *greater than the individual* workman could stand, which was the key to the recovery.

For example: in *Sturgis Bros.* v. *Mays, supra,* the Commission allowed a recovery because of the collapse of Al Mays, who died of a heart attack, yet the Commission carefully stated: ". . . that the lifting of the pole required no more than usual exertion." The Commission furthermore said of the testimony of the doctor: "It was his opinion that he (Al Mays) died of heart failure, which is not uncommon in a person over 50 years of age; and those attacks may come on without warning and sometime without unusual exertion. . . . He further testified that in his opinion, lifting the pole was not the cause of death, but in bending over, sawing the log, which was on the ground, when he (Al Mays) raised up suddenly, the heart failed to compensate, and he died; . . ." Thus in *Sturgis Bros.* v. *Mays,* there was nothing other than the usual course of work being done by the man; and recovery was allowed, and we affirmed.

Another case to the same effect is *Quality Excelsior Coal Co.* v. *Maestri, supra.* There the evidence disclosed that the worker was *doing his usual work,* but that his place of work was in a cramped and confined position. The Commission recited: ". . . we are of the opinion . . . that labor such as was performed by the deceased, . . . put a greater strain upon his already diseased and weakened heart than it could stand, thereby aggravating the pre-existing diseased condition of his heart and hastening death." The Commission allowed a recovery, and we affirmed.

The rule stated in those two cases is sound law. It is not necessary, in order for the Commission to allow a recovery for the collapse of a worker, that there be shown that the worker was subjected to a burden greater than the usual course of the work. Recovery is not gauged by the average of work, but by the ability of the collapsed worker to discharge the burden.

I frankly admit that there is language in some of our cases that could have caused the Commission to believe that it could allow recovery only when there was proof that the work load at the time of the collapse was greater than the usual work load; but I insist that to reach such conclusion, the language must be lifted out of its context. As an illustration, in *McGregor* v. *Arrington, supra,* there is a statement that the worker, immediately prior to his collapse, was tugging at one end of a board, and the opinion has this language: "It is suggested, and appears highly probable, that more strength and effort was required to slide the plank into place, than would have been required to lift or carry it." But that quoted language was not intended to mean that it must be shown that the work load was greater than the usual work load; because in *McGregor* v. *Arrington,* we quoted, with approval, this language from the Commission's allowance of the claim:

"In our opinion the evidence shows that the decedent, while performing his duties as an employee for respondent employer, put forth an effort that was greater than his heart, already weakened by disease and no doubt fatigued by long hours of labor, could bear. Thus, the

decedent suffered an exertion, the accidental and unexpected result of which was an injury to his heart, causing his death. We, therefore, hold that decedent's death resulted from an accidental injury arising out of and in the course of employment.''

In short, there are cases which allowed recovery in the absence of any evidence of a work load more than the usual work load in that employment. The point I am making is that there need be no proof of any such additional work load before recovery can be allowed. The test for the Commission to apply in allowing a recovery is exactly that last quoted from *McGregor* v. *Arrington*.

In some cases, it has been intimated that if the testimony shows that the worker would have died anyway, then there was no ''accident arising out of and in the course of employment.'' But on this question of accident, I call attention to what we said in *Batesville White Lime Co.* v. *Bell,* 212 Ark. 23, 205 S. W. 2d 31; and what we said in *Murch-Jarvis Co.* v. *Townsend,* 209 Ark. 956, 193 S. W. 2d 310.

(2)   Now, coming to the second group of cases— *i. e.,* those in which the Commission refused recovery and we reversed,—attention need only be called to the case of *Triebsch* v. *Athletic Mining & Smelting Co., supra,* and *Scobey* v. *Southern Lumber Co., supra.* In each of those cases there was proof of an additional strain or work load; and we reversed the Commission because it had refused a recovery *even in cases of additional strain.* In the Triebsch case, we said:

''These facts are: a pre-existing ailment, an increased and overtaxing effort to accomplish the work load under the conditions existing, and a collapsed worker resulting therefrom. These make a case of *accidental injury* within the purview of the Workmen's Compensation Law.''

In the *Scobey* v. *Southern Lumber Co.* case, we said:

''The conditions under which Scobey worked,  .  .  . all considered together, are substantial evidence to the effect that the constant inhalation of the emery dust and

sawdust caused an irritation in the lung which accidentally aggravated a cancerous condition, within the meaning of the Workmen's Compensation Law, and caused the death of Scobey.''

The point I am trying to emphasize is, that *when there was an extra work load,* we reversed the Commission and allowed a recovery because there had been an extra work load, but those cases do not mean that recovery can be allowed only when there is an additional work load.

To summarize: From our own cases, and from the authorities generally,[1] I understand that when the Commission allows a recovery in a case like this one, then this Court will not reverse unless there is an entire absence of substantial evidence that would indicate that the collapse arose out of and in the course of the work; but when the Commission refuses a recovery, then this Court will not reverse the Commission unless the evidence shows an extra or additional strain, burden, or working condition but for which the collapse of the worker would not have occurred. In other words, the Commission may find that the collapse of the worker (brought about by aggravation of a previous condition) arose out of and in the course of the work, without any extra or additional strain, burden, or working condition; but when the Commission finds against recovery in such a state of facts, then there must be evidence of some extra or additional strain, burden, or working condition before this Court will reverse the Commission.

In the case at bar, the Commission has found that the collapse of the worker came about in such a way that there can be no recovery. Since the Commission's findings have the force and effect of a jury verdict, I cannot vote to reverse the Commission, although if I had been a finder of the facts, in the case at bar, I would have reached a conclusion different from that of the Commis-

---

[1] In Synder's Permanent Edition on Workmen's Compensation, Vol. 5, § 1387, cases are reviewed from many jurisdictions on heart disease and injuries as accidents. See, also, 71 C. J. 607, *et seq.* Also, there are Annotations on this point in 19 A. L. R. 101, 28 A. L. R. 209, and 60 A. L. R. 1314.

sion. I think the Workmen's Compensation Law should be construed to allow recovery for the collapse of a worker in a case such as the one at bar, rather than to deny recovery. But I cannot say that there are no substantial facts to support the Commission's conclusion in the case at bar; therefore, I concur in this case.

MILLWEE, J., dissenting. I respectfully dissent from the opinion of the majority in this case and the case of *Baker* v. *Slaughter,* also handed down today.

Unless the Workmen's Compensation Commission and this court committed a grave error in the case of *McGregor & Pickett* v. *Arrington,* 206 Ark. 921, 175 S. W. 2d 210, the majority are doing so in the instant case. The undisputed facts in the two cases are practically identical. In the McGregor & Pickett case a carpenter was lifting and sliding one end of a plank, 2 x 12 and 16 feet long, and weighing from 100 to 150 pounds when he slumped and was dead from a heart attack by the time his body could be lowered from the scaffold where he was working.

In the case at bar the deceased was lifting and placing in position one end of a timber 4 x 10 and 16 feet long, weighing from 100 to 150 pounds, when he was stricken with a heart attack and fell from the scaffold upon which he was working and died shortly thereafter. The deceased in each case had for several years been afflicted with heart disease and the accident happened near the end of the work day.

How the Commission could make an award in one case and refuse it in the other is beyond my comprehension. In the case at bar the Commission held that the evidence failed to disclose any unusual strain or fortuitous happening that would constitute an accidental injury. In the McGregor & Pickett case the Commission found: ''Thus, the decedent suffered an exertion the accidental and unexpected result of which was an injury to his heart causing his death. We, therefore, hold that decedent's death resulted from an accidental injury arising out of and in the course of employment.''

The majority quotes from an isolated part of the examination of the witness Midgett by the Chairman of the Commission in which the conclusion was drawn from the witness that the work of deceased at the time of his collapse was of no more strenuous nature than that which he had been doing. This conclusion and opinion of the witness is meaningless in view of the undisputed fact that the workmen previously had been handling much shorter and lighter timbers and this particular timber was the first heavy one that was handled after deceased came on the job.

In *Harding Glass Co.* v. *Albertson,* 208 Ark. 866, 187 S. W. 2d 961, we approved the following statement from Schneider on Workmen's Compensation, (Perm. Ed.) § 1328: ''The majority of the American courts follow the English rule as set out in the case of *Clover, Clayton & Co.* v. *Hughes,* [1910] A. C. 242: 'An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or condition of health.' '' In that case a workman died eight months after suffering from heat prostration on the job and we said: ''While appellants cite authorities holding to the contrary, we think the better rule, and the one supported by the great weight of authority, is that a heat prostration which resulted as here, and was sustained by a workman or employee, while engaged in the employment, and which grew out of the employment, whether due to unusual or extraordinary conditions or not, is deemed an accidental injury and compensable, and we so hold.''

Our decisions in the McGregor & Pickett and Albertson cases and many others such as *Sturgis Bros.* v. *Mays,* 208 Ark. 1017, 188 S. W. 2d 629, and *Batesville White Lime Co.* v. *Bell,* 212 Ark. 23, 205 S. W. 2d 31, recognize the rule supported by the great weight of authority to the effect that an injury is accidental where either the cause or the result is accidental, although the work being done is usual and ordinary.

In *Baker* v. *Slaughter,* the majority intimate that the above quotation from Schneider which we approved and

followed in the Albertson case is wrong as applied here because it was stated out of context with other statements in the section. I submit that a digest of the numerous cases, which follow the statement of the rule in § 1328 of Schneider, *supra,* demonstrates the correctness of the author's statement whether considered in or out of context. The beautiful lip service to the law of liberal construction, which the majority state but proceed to ignore, and the glowing tribute to the stout courage of the deceased, have a rather hollow ring in view of the harsh and inconsistent results reached in these cases. Surely the dependent widow and children who have been so unjustly treated will find little comfort in them.

This is indeed a grey day for the dependent families of Arkansas workmen.

Justice WARD concurs in this dissent.