FAUST BAND SAW MILL *v.* RICHARDSON.

4-9940                                                          253 S. W. 2d 213

Opinion delivered December 8, 1952.

*Wright, Harrison, Lindsey & Upton,* for appellant.

*Dinning & Dinning,* for appellee.

GRIFFIN SMITH, Chief Justice. In finding against liability and adjudging that Gertrude Richardson could not recover for the death of her husband, Workmen's Compensation Commission said:

"To hold that an employer is liable for the death of an employe simply because he dies within the hours of his employment while engaged in his usual occupation without the intervention of an unusual happening brought about by a risk or hazard created by the employment, would be placing a liability upon the employer which is not contemplated by the Act, and would in effect be

changing Workmen's Compensation coverage into health, sickness, and life insurance".

The application of this pronouncement is presented by the appeal of Faust Band Saw Mill and its liability carrier, American Mutual Liability Insurance Company. Circuit court reversed the Commission, and we, in turn, must reverse the trial court.

The decedent had spent a large part of his life as an agricultural worker, but for a considerable period prior to death had been engaged as a lumber stacker for the sawmill company. At 11:30 a. m. Sept. 12, 1950, a brief rest was taken after unloading a wagon and waiting for another. The interim is estimated at from three to five minutes. During this period Richardson talked with other workers and gave no indication of physical impairment or distress other than an incidental remark to the effect that he was not feeling well. He had, however, mentioned that a son had been in trouble. Another witness, in commenting upon Richardson's attitude and reactions, remembered his comment that the son's involvement had been disposed of.

Milton Lynch was working with Richardson the day death occurred. The two had been associates since December, but in previous years had worked together. A stacking crew is composed of two men; one stands on the lumber pile to receive the sawed product as it is taken from a wagon, while the ground man (in this case Richardson) uses a jack to assist in lifting. The jack is described as a five-foot piece of iron or steel about four inches wide, approximately an inch thick and its weight was 36 lbs. It is used as a lever to aid in hoisting the lumber.

The planks sawed the morning of September 12th were cottonwood, an inch thick—considerably lighter than oak or hickory. When asked whether a stack of lumber had been partially finished Lynch replied, "No, just a little low pile". But in explaining details of the morning operations the witness testified that ninety layers of lumber had been stacked between seven o'clock and 11:30. In answer to the question, "Did you stop during that

time?" Lynch replied, "Oh, yes, we sat around!" Some days they would stack 120, 130 or 140 layers before noon, depending on how rapidly the product came from the mill. Two stacking crews were employed and the men were paid by the thousand board feet. Appellee assumes from this circumstance, and from testimony given by Lynch, that there was some competition between the two groups for access to wagons as they came from the mill. The clear inference deducible from this testimony is that the competition was voluntary and that there was an entire absence of compulsion.

After the three-to-five minute intermission Lynch and Richardson observed a wagon approaching with a load of lumber. It is indicated that Richardson (who had picked up the jack and had it on one shoulder) concluded to make first contact with the wagon and thereby establish priority over the second crew. He started walking in the direction of the wagon—"just an ordinary [fast] walk, he wasn't running"—and was seen to fall backward. Lynch was not far behind the unfortunate man. When he reached Richardson the stricken worker gasped and died almost immediately. In falling Richardson was not vitally hit by the jack, which fell on his legs.

Lynch had testified that their purpose in getting possession of the lumber was to complete a stack of a hundred layers before noon; that they were seven or eight shy; that eight tiers could be laid in five minutes, and they had about thirty minutes in which to complete the task.

Two physicians testified. Dr. H. B. Oldham saw the dead man within fifteen minutes after the heart attack occurred. Coronary occlusion was the diagnosis. From an examination no outward appearances indicated that the cause of death was accelerated by any accidental injury, nor were there symptoms suggesting that death had occurred from any abnormal cause. The witness could not say whether rapid walking and a 36-lb. load brought on the coronary stoppage—"he could have had it while resting". On cross-examination Dr. Oldham said that the heart trouble would not necessarily have been

disclosed by previous symptoms, that is, not in a manner causing suffering and distress. Undue exertion and unusual strain "possibly" could have had a tendency to cause collapse. The Doctor would not say that the exercise admittedly engaged in by Richardson "probably" caused heart stoppage. Question: "If it be true that the deceased collapsed while carrying a steel bar and while walking at a rapid gait, state whether or not, in your opinion, his death would have occurred at that time and place if it had not been for such *unusual* exertion on his part?" Answer: "It is impossible to answer 'yes' or 'no' to this question. [He could have had] coronary at any time".

Dr. Doyle W. Fulmer, under examination by the claimant's attorney, reached the following conclusions: "Any unusual stress or strain on a diseased blood vessel—especially those of the heart and brain—will produce symptoms. The act of carrying a heavy object and hurrying is likely to aggravate a diseased vessel and result in rupture or occlusion. From this case history it is my opinion that the act of hurrying and carrying a weight aggravated a diseased condition".

The applicable law here does not differ appreciably from what was said in *Baker* v. *Slaughter*, 220 Ark. 325, 248 S. W. 2d 106. Ark. Stat's, § 81-1302. Compensation is recoverable only when death or injury results from an accident. A worker killed or disabled while on the job, or whose death is perceptively hastened by reason of some unusual transaction—a transaction that might with reason be construed to be an accident—comes within the Act's provisions. But, as the Commission has so aptly said, the benefits are not insurance in the sense that compensation may be claimed for disability or death where at the time of impairment the work load was precisely what the employe had been engaged to carry and it is not unreasonable.

There is substantial testimony to establish a normal course of conduct. Rest periods were frequent, the lumber handled September 12th was not of the heaviest, the iron jack was not being used to hoist mill products, the quantity stacked was below an average, and Rich-

ardson was merely walking rapidly with a 36-pound load when the heart attack occurred. He did not stumble or strike anything while approaching the wagon, and the fall itself was not traumatically serious.

Our decisions rest on the proposition that the Commission must ascertain essential facts and that its conclusions will not be disturbed if the evidence for or against an award is substantial. Here the finding was that death occurred from a natural cause, hence circuit court erred in disturbing the decision.

Reversed with directions that the Commission's findings be reinstated.

Mr. Justice MILLWEE dissents; Mr. Justice WARD concurs.