Delight Egg Farms, Inc. et al *v.* Raymond Cash

5-3978                                        407 S. W. 2d 108

Opinion delivered October 24, 1966

*McMillan, McMillan & Turner,* By *Otis H. Turner,* for appellant.

*Jerry Thomasson,* for appellee.

Ed. F. McFaddin, Justice. This is a Workmen's Compensation case. The Commission made an award that the worker, Raymond Cash, was entitled to total permanent disability compensation; the Circuit Court affirmed; and the employer (Delight Egg Farms, Inc.) and its insurance carrier bring this appeal insisting: (a) that Mr. Cash is only entitled to 58% permanent partial disability to the left shoulder; and (b) that there is no evidence that any other disability arose out of and in the course of the employment.

The basic facts are not in dispute. Raymond Cash, a man 54 years of age, was a truck driver for the appellant, Delight Egg Farms, Inc. His duties were to assist in loading crates of eggs on the truck, to haul them to destination, and to assist in unloading them. Dates are important:

(a)   In 1963 Mr. Cash had a physical examination preliminary to a driver's license and was found to be in good condition in every respect.

(b)   On January 23, 1964, while assisting in load-

ing crates of eggs, he slipped and fell some four or five feet from the loading platform to the ground, thereby receiving injuries, contusions and abrasions to his left shoulder, his left leg, and the left side of his head. He was immediately sent to Dr. George H. Wright at Hope, where he was hospitalized for treatment. Dr. Wright found a postero-inferior dislocation of the left humerus (shoulder); and also the abrasions and contusions previously mentioned. In addition, Dr. Wright found a rather marked hypertension and uncontrolled diabetes mellitus. The dislocated shoulder was reduced and splinted. After five or six days the diabetic condition was controlled and the hypertension improved; and Mr. Cash was discharged from the hospital for out-patient observation.

(c) On January 30, 1964, Mr. Cash returned to Dr. Wright, complaining that pains had developed in the left leg. There was a slight swelling of the foot; and Dr. Wright and his associate, Dr. Forney Holt, diagnosed Mr. Cash's condition as a thrombo phlebitis of the deep vessels of the leg. Bed rest, elastic bandage, and close observation were advised. Mr. Cash remained in the hospital for about two weeks. His hypertension and diabetes seemed to be under control; but his left leg continued to swell when he stood on it for any length of time. He was discharged from the hospital and sent home for further convalescence, with instructions to avoid any exertion.

(d) Some time in February Mr. Cash returned to work in order to support his family, first doing light work for about two weeks, and then gradually doing more work. On the morning of March 27th he assisted in loading his truck with some 60 or 70 cases of eggs (each loaded case weighing about 30 pounds), which he took to Texarkana and assisted in unloading.

(e) The next morning (March 28th) he awakened to find his left hand swollen and his mouth drawn a little; but he went to work that morning and again en-

gaged in loading crates of eggs on the truck. Soon his hand was so drawn that he could not open it, and his mouth was drawn, and he had numbness and loss of use of his left side. He had suffered a paralysis. He was sent to Dr. Wright in Hope, who put him in the hospital, where he remained for some twenty days.

It will be observed that the original injury was on January 23rd; that on January 30th a thrombo phlebitis condition developed in his left leg; and that by March 28th there was a cerebral vascular accident. The doctors call this CVA, but in layman's language it means a paralytic stroke. He filed a claim for total permanent disability. In the hearing before the Referee there was a serious contention made by the claimant that the paralytic stroke of March 28th was the result of the thrombo phlebitis of the leg. That claim was disputed. In the hearing before the Full Commission, the attorney for the claimant—for reasons best known to himself—made this statement: "I, attorney for the claimant Raymond Cash, hereby state that I withdraw any contention that claimant's stroke was caused by a blood clot emanating from his left calf. Claimant retains his contention that the stroke was aggravated by his employment."

Thus, there is now no claim that the thrombo phlebitis condition diagnosed by Dr. Wright on January 30th was the cause of the paralytic condition of March 28th. Rather, it is the contention of the claimant (appellee here) that he has three injuries, all arising out of and in the course of his employment, to-wit: (1) the frozen shoulder injury was the result of the fall on January 23, 1964, and is compensable; (2) the thrombo phlebitis condition was the result of the injury on January 23rd, and is compensable; and (3) the work which appellee performed on March 28th aggravated his hypertension and resulted in the stroke or paralysis which he suffered and is therefore compensable.

As to the first two items (the frozen shoulder and the thrombo phlebitis) the evidence is overwhelming

that these injuries arose out of and in the course of the employment, in that the appellee fell from the loading platform on January 23rd. But as to the paralytic condition of March 28th being aggravated by his work, the evidence is in dispute. A majority of the Commission agreed with the claimant in all of his three contentions; and the only question before us is whether there is substantial evidence to sustain the finding of the Commission as regards the paralytic stroke on March 28th. The doctor for the claimant testified that when Mr. Cash went to work on March 28th his work aggravated his already incipient paralytic condition; and that if he had stayed in bed and avoided exertion he probably would not have suffered the complete disability that he has. Thus, the doctor for the claimant made a case of a workman with a disability collapsing on the job because of exertion.

The eminent doctor for the employer agreed that the exertion put forth at work on the morning of March 28th aggravated the paralytic condition.[1] Thus we have a case wherein a worker in a bad physical condition continued to work and the exertion put forth resulted in a

[1]Here is the testimony of the doctor on the point:

"Q. You wouldn't want him up walking about?

"A. No.

"Q. Now this man testified, and he gave you a history, that he woke up one morning in March . . . that his left hand was numb, paralyzed and drawn and that the whole left side of the body, the face, arm and leg were numb. Do you feel that he was beginning to experience the symptoms of a stroke at that time?

"A. Yes.

"Q. Then he went on to work and Dr. Wright tells us that he saw him at 9 o'clock that morning . . . the record up to date shows that he worked from seven until nine o'clock. He testified that during that time he lifted thirty containers from a railroad boxcar onto a truck and that the containers weighed thirty pounds each. . . . In any event would you say that whether he lifted thirty containers weighing thirty pounds each or drove a truck around the area that morning, that the work aggravated his condition even to the extent of one percent?

"A. I think it is quite reasonable that his condition could have been aggravated by any manner of exertion."

collapse and total disability. Under these circumstances the Commission was correct in awarding total permanent disability,[2] in accordance with our holdings in such cases as *Herron Lbr. Co.* v. *Neal,* 205 Ark. 1093, 172 S. W. 2d 252; *McGregor* v. *Arrington,* 206 Ark. 921, 175 S. W. 2d 210; and *Harding Glass Co.* v. *Albertson,* 208 Ark. 866, 187 S. W. 2d 961.

Affirmed.

COBB, J., disqualified and not participating.

[2]The Workmen's Compensation Commission's award contained this very pertinent paragraph in its findings: "We are aware that where there is life there is hope. Should this claimant make unexpected improvement to such a point that he can resume gainful employment, respondent is in no way foreclosed by this decision to then seek an order of the Commission terminating unpaid compensation benefits."