BIRCHETT *v.* TUF-NUT GARMENT MANUFACTURING COMPANY.

4-7014                                      169 S. W. 2d 574

Opinion delivered March 8, 1943.

*Gene Rhodes* and *Joseph Brooks,* for appellant.

*Donham, Fulk & Mehaffy* and *E. W. Moorhead,* for appellee.

CARTER, J. Zelma Birchett filed a claim with the Workmen's Compensation Commission against her employer, Tuf-Nut Garment Manufacturing Company, and against Globe Indemnity Company, its insurance carrier, seeking an award of compensation for an injury which she alleged arose out of and in the course of her employment. The Commission, after a hearing, found "That the claimant, Zelma Birchett, did not receive an accidental injury that arose out of the employment with her employer," and denied her claim.

Zelma Birchett appealed from this award to the circuit court of Pulaski county, and the Commission certified to the court all documents and papers on file before it in the matter, together with the transcript of evidence and its findings and award. The statute, § 25 (b) of Act 319 of 1939, provides that these papers shall become the record of the cause in the circuit court, that no additional evidence should be heard, and that, in the absence of fraud, the findings of fact made by the Commission, within its powers, shall be conclusive and binding.

The circuit court sustained the award of the Commission and dismissed the appeal. The claimant excepted to this judgment and prayed and was granted an appeal to this court.

Section 25 (b) of Act 319 of 1939 directs that the circuit court, on such appeal, "shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: '1. That the Commission acted without or in excess of its powers. 2. That the award was procured by fraud. 3. That the facts found by the Commission do not support the award. 4. That there was no sufficient

competent evidence in the record to warrant the making of the award.'

"Appeal from the circuit court shall be allowed the same as in civil actions  . . ."

The Commission's report, in full, is as follows:

"The claimant, Zelma Birchett, had been employed by the Tuf-Nut Garment Manufacturing Company for approximately three years. Claimant alleges that on September 13, 1941, about 9:30 a. m., during the rest period provided by the employer for the employees, she saw a group of girls standing near a table apparently reading and signing some sort of paper. She approached the table for the purpose of finding out what the paper was, and found it to be a petition to the effect that the employees were satisfied with the working conditions of the plant and which was being signed by various employees. The paper at that time was in the possession of Malveda Barnes. Claimant testified that she requested to be permitted to read the paper and the signatures thereto, but the pages were being turned so rapidly that she was unable to do so; that she pulled the paper from beneath the clip that held it to a board and retreated to her machine; that she was followed by Malveda Barnes and others and set upon by them to regain the paper. Claimant testified that she had pushed the paper beneath her blouse and that in the struggle to regain the paper she was choked, her hair was pulled, and that her blouse was ripped open and the paper removed; that as a result she suffered accidental injuries which had disabled her and prevented her from performing her usual work and from which she now suffers. Claimant testified that the struggle to regain the paper was over at about the time the warning bell was rung. This bell was rung five minutes in advance of the time the employees were required to resume their work for their employer. Claimant testified that in the struggle over the paper she estimated some eight employees were involved.

"Ruby Carlton, another employee, testified that she approached the table with the claimant to read the paper and that claimant, Zelma Birchett, took the paper; that Mrs. Browning, supervisor, among others, demanded it

to be taken from the claimant; that she does not know who struck the first blow; that the accident happened on Saturday and that all who participated continued to work Saturday and came back Monday as usual. Claimant ceased work on Tuesday, September 16, 1941.

"Vera Birchett, sister-in-law of the claimant, testified that when she approached the struggle Malveda Barnes and a Mrs. Duncan had hold of her sister-in-law; that the only part she had in the struggle was in attempting to remove Mrs. Barnes and Mrs. Duncan from the fight. Virtually the same set of facts were testified to by Mrs. Nettie Carroll, who actually removed the paper from the claimant's blouse, and by Mrs. Betty Sexton.

"Mrs. W. V. Browning, supervisor of this department, testified that she had seen the paper being circulated; that she understood it was originated by some of the boys working downstairs and that it was to the effect that the employees were satisfied with their working conditions.

"The testimony before the Commission from various witnesses is that some time prior to the incident on September 13th there had been a series of broadcasts regarding the working conditions in this and possibly other industries.

"According to the testimony of Malveda Barnes some of the employees, not members of the union, were incensed over these broadcasts, and the paper referred to herein was to the effect that the employees were satisfied with their working conditions, and as she understood was being circulated for the purpose of stopping the broadcasts which were union sponsored.

"All of the testimony before the Commission is that this paper was circulated only during rest or lunch periods and that the arguments pro and con regarding unions and non-unions have been engaged in for some time during these periods. The testimony before the Commission is that the paper had its origin among some of the employees of the plant and was being circulated by employees. Testimony is to the effect that the trouble from which the claimant alleges she received accidental

injuries started during a rest period and ended on or about the warning bell, prior to resumption of employment. This rest period was provided each morning and each afternoon, and lasted twenty-one minutes, during which time the employees were free to go and do what they wanted, and to leave the premises, which was frequently done.

"Upon all the evidence in this case, the Commission makes the following findings of fact:

"1. That the parties to this cause are bound by the provisions of the Arkansas Workmen's Compensation Act.

"2. That the respondent employer herein, Tuf-Nut Garment Manufacturing Company, has secured payment of Workmen's Compensation benefits through a policy of insurance issued by the Globe Indemnity Company.

"3. That the claimant, Zelma Birchett, did not receive an accidental injury that arose out of the employment with her employer.

"Upon the foregoing findings of fact, the Commission bases the following conclusions of law:

"To be compensable under the Arkansas Workmen's Compensation Act an accidental injury must arise out of and in the course of employment, both elements must be present. It is not sufficient that an accident arises in the course of employment, but it must arise out of it. In order to satisfy the act, both conditions must occur. The words 'arising out of' refer to the origin or cause of the accident, while the words 'in the course of' refer to the time and place and circumstances under which the accident takes place.

"The burden of proof is upon the claimant herein not only to establish the fact that she was injured in the manner claimed, but to show that she was injured by an accident that arose out of and in the course of her employment.

"In the opinion of the Commission all of the testimony before the Commission bears out that the cause of this difficulty, in which the claimant alleges she received this accidental injury, arises out of a personal matter

between the employees; that it had its origin in their personal differences and opinions as to unionism and nonunionism, and did not arise out of the employment or in furtherance of the master's interest or business. The claimant herein having failed to discharge the burden placed upon her to establish the fact that the accidental injury complained of arose out of the employment, her claim for compensation herein must be denied.''

There is no dispute about the facts. The sole question is whether, as a matter of law, the facts found by the Commission do or do not support its award—that is whether as a matter of law the facts sustain the Commission's conclusion that claimant is not entitled to compensation.

The question here presented is a new one in this state. Decisions from other jurisdictions, while persuasive, are not conclusive.

Claimant's injuries arose out of a personal difficulty which she provoked herself. The cause of the illfeeling is immaterial. During a rest period, she entered the work room and saw a group of employees reading a document. They were not near her place of work, were not talking to her and were not molesting her in any way whatever. She went up to this group and snatched the paper, which was not hers and which she had never seen before, from her fellow employees, stuffed it in the bosom of her dress and ran away with it. She does not claim she was acting in a playful spirit. In the ensuing struggle for its recovery by the employees from whom she snatched the paper, she claims she got hurt.

It is easy to suppose extreme and doubtful cases, but they often help to clarify the question to be decided. We can see no essential difference between this case and that of a clerk in a store who might snatch a customer's purse and get hurt in the ensuing fight. In neither case can it be said that the injury arose out of and in the course of the employment.

Section 2 (f) of the act (Act 319 of 1939) provides:

'' 'Injury' and 'personal injury' shall mean: Accidental injury or death arising out of and in the course of employment. . . .

Section 5 of the act provides: "Every employer subject to this act shall in accordance therewith secure compensation to his employees and pay or provide compensation for their disability or death from injury arising out of and in the course of employment, without regard to fault as a cause for such injury; provided, that there shall be no liability for compensation under this act when the injury has been solely occasioned by intoxication of the injured employee while on duty or by willful intention of the injured employee to bring about the injury or death of himself or another."

The theory behind the Workmen's Compensation Act is this: Every industry exposes those engaged in it to certain risks of being hurt, such risks arising out of the mere fact of being engaged in that industry. The policy behind the act is the decision of the people that it is fairer to charge as an expense of the industry (to be paid by the ultimate consumer just as he pays for the raw materials used by the industry) a part of the losses arising from the risks, to which those engaged in that industry are exposed by reason of being so engaged, than it is to let such losses fall entirely upon the employee who gets hurt. But the law does not call for general accident insurance. Its purpose is to compensate only for losses resulting from the risks to which the fact of engaging in the industry exposes the employee.

It might be that working with, or next to, some quarrelsome workman involves a risk to which an employee might be exposed by reason of being engaged in the industry. But being engaged in an industry does not expose an employee to any risk of being hurt in a fight which that employee starts herself by snatching a paper, which does not belong to her, from the possession of a group of her fellows who are not molesting her in any way, and running off with the paper. Being engaged in the industry cannot be said to be the origin or cause of the fight nor to have created a risk of the fight. The fight did not arise out of her employment. Nor did the fight arise in the course of her employment for she left her employment—her activities in the industry—when she snatched and ran away with the paper.

The award by the Commission was correct and the judgment of the circuit court sustaining such award is affirmed.

The appellant, in her brief, expresses fear that in the event she brings a tort action for her injuries she may be met by a plea of *res judicata* because of this proceeding before the commission. She asks that this court now state that she shall not be deprived, by reason of this proceeding, of any common-law remedy she might have. The decision of such a question is not involved in the disposition of the case now before the court. This court cannot now decide it; and should express no views on it until it is necessary to pass upon it in the decision of a case before the court.

ROBINS, J., (dissenting). The appellant, while employed by the Tuf-Nut Garment Manufacturing Company, was injured by an assault committed upon her by certain other employees of the company. The assault was caused by an effort of these fellow employees to take forcibly from the appellant a document expressing satisfaction with the working conditions in the plant. This document was drawn up for the purpose of same being circulated among and submitted to the employees of the plant, including the appellant, for their signature. The only fault of the appellant, according to the contention made by her employer, was that she took possession of this document and carried it with her to her place of work in the plant. While appellant may not have had the right to take possession of this document, this did not justify the other employees in assaulting her. Her alleged provocative act in taking possession of the petition and carrying it with her to her machine might have been a proper matter to consider in fixing the punishment in a criminal case against her assailants, or in mitigation of damages had she brought a civil suit for her injuries against them, but it certainly would not have been a defense in either action. The undisputed facts in this case show that the appellant was injured in the course of her employment, and that the altercation which resulted in the assault upon her grew out of her employment. The matter of working conditions in the

plant was under consideration and the document that led to the trouble was a written declaration of the views of some of the employees as to these working conditions. The circulation of this paper, dealing with employment conditions, precipitated the violence which caused appellant's injuries. In deciding a somewhat similar question, the United States Court of Appeals for the District of Columbia in the case of *Penker Construction Company* v. *Cardillo,* 118 F. 2d 14, said: ''Appellant contends that the injury which caused death, although it arose in the course of employment, did not arise out of the employment. The underlying facts are not disputed. Wilder's job was obtained for him by Whitfield, a fellow employee. Whitfield demanded a commission of $10 from Wilder. Another employee instructed Wilder to refuse to pay it, and he did refuse. This so enraged Whitfield that he struck the blow which killed Wilder. Wilder was at work at the time. These facts not only support, but require, the award of compensation. An injury arises out of the employment if it is caused by the environment, whether inanimate, animal, or human, to which the employment exposes the employee. It does not matter whether he is struck by a machine, a mule, or a man. An assault by a stranger, and *a fortiori* by a fellow employee, clearly arises out of the employment where, as here, the employment provides the motive for the assault. Wilder was killed because he had employment for which he refused to pay a fee. That he was under no obligation to pay is immaterial. The case is like *Maryland Casualty Company* v. *Cardillo,* 69 App. D. C. 199, 99 F. 2d 432. There the employment led to a criticism which led to an attack; here the employment led to a demand and refusal which led to an attack.''

This court, in the case of *Lundell* v. *Walker,* 204 Ark. 871, 165 S. W. 2d 600, held that the death of Walker, a farm hand employed by Lundell, arose out of and in the course of Walker's employment. The evidence in that case disclosed that Walker was shot by Scott, Lundell's foreman, in an altercation which followed Scott's action in discharging Walker. This court sustained an award in favor of Walker's widow, in spite

of the fact that at the time Walker was killed the relation of master and servant between Lundell and Walker had been terminated. In that case an argument about the termination of Walker's employment brought on the difficulty in which Walker was shot. In the case at bar the difficulty was brought on by the circulation of a "round robin" in regard to working conditions. It seems to me that there is no substantial difference in the fact situation presented in these two cases.

The people of Arkansas, by initiated act, saw fit to do away with common-law liability of the master to the servant, in cases affected by the act, and to substitute therefor a system of fixed awards, based on the earnings of the servant, for injuries sustained by the servant arising out of his employment. By this act the right to recover whatever sum a jury might see fit to award him for injuries caused by the negligence of the master was taken away from the servant, and to compensate for this loss of his common-law right the servant was given the right to an award of a fixed amount, based on his earnings, regardless of the master's negligence, and regardless of the servant's negligence, provided the injury arose out of and in the course of the servant's employment. The Massachusetts court in the case of *Young* v. *Duncan*, 218 Mass. 346, 106 N. E. 1, said: "The purpose of this act has been stated several times. Briefly, it was to substitute a method of accident insurance in place of the common-law rights and liabilities for substantially all employees except domestic servants, farm laborers and masters of and seamen on vessels engaged in interstate or foreign commerce, and those whose employment is casual or not in the usual course of trade, business or employment of the employer, and probably those subject to the federal employers' liability act. It was a humanitarian measure enacted in response to a strong public sentiment that the remedies afforded by actions of tort at common law and under the employers' liability act had failed to accomplish that measure of protection against injuries and of relief in case of accident which it was believed should be afforded to the workman." Even under the common law, in certain in-

stances, the master might be held liable for assaults of fellow servants. See *Henry Wrape Co.* v. *Barrentine*, 138 Ark. 267, 211 S. W. 366.

In my opinion, the majority of the court in this case is placing a narrow and restricted construction upon a law that should be liberally construed in favor of those whom it was intended to protect—the men and women who must toil for their daily bread. I, therefore, respectfully dissent.

I am authorized to state that Justice McFADDIN concurs in the views herein expressed.