491 S.W.2d 778 (1973)
Ralph LEWIS and Julia Lewis, Appellants,
v.
GARDNER ENGINEERING CORP., Appellee.
No. 5-6203.
Supreme Court of Arkansas.
March 12, 1973.
Rehearing Denied April 16, 1973.
Floyd Lofton and Jack Sims. Little Rock, for appellants.
Wright, Lindsey & Jennings, Little Rock, for appellee.
BROWN, Justice.
Ralph Lewis and wife brought suit for damages against Gardner Engineering Corporation and its employee, Travis Green, for injuries sustained while employed by S.O.G. of Arkansas, as a pile driving foreman on Lock and Dam No. 4 near Pine Bluff. Gardner Engineering manufactured the pile driver that became unhitched and caused the steel piling to fall upon Lewis. It was the theory of Lewis that poor workmanship caused a defect in the hitching device made into the pile driver. On motion of Gardner Engineering for summary judgment the trial court held that S.O.G. *779 of Arkansas was a joint venture entered into by Gardner Engineering and San Ore Construction Co., a partnership for the sole and exclusive purpose of bidding upon and performing the construction on Lock and Dam No. 4; that Ralph Lewis as employee and S.O.G. as employer were subject to the Arkansas Workmen's Compensation Law; and that the employee of a joint venture is barred from claiming in tort against one of the joint venturers, the exclusive remedy being under the workmen's compensation act.
Appellants contend it was error to apply the general rule that an individual member of a joint business adventure is exempt from tort liability under the workmen's compensation law "because in this case a joint adventure was of itself an employing entity, separate and distinct from the parties thereto". Appellants recognize the general rule which we follow, namely, that a joint venturer who is also an employer is immune from tort liability under the workmen's compensation law. Smith v. Rodgers, Admx., 251 Ark. 994, 477 S.W.2d 831 (1972). The rule has been well stated thusly:
It has been held that unlike a partnership, a joint adventure is not a distinct legal entity separate and apart from the parties composing it, and consequently an employee of a joint adventure is an employee of each of the joint adventurers under ordinary principles of agency, and the liability of the joint adventurers and their insurance companies for workmen's compensation to such employee is joint and several. Personal InjuryActions, Defenses, Damages, Vol., 4 D, Chapter on Joint Adventurers and Partnerships, § 1.03, p. 174.
Under their first point for reversal appellants contend that the parties went much further than creating a joint venture "so far in fact as to create a separate employing entity. . . . S.O.G. of Arkansas was so autonomous, so vested with independent control, as to take on the nature of a de facto corporation". Appellants point to the provisions in the agreement of joint venture for each party to appoint a designee and alternate designees to act for it with full and complete authority over problems arising out of the joint venture. They also point up a provision governing the settlement of any dispute between the venturing parties or between their designees, which provision provides for full and complete arbitration of the problem or problems. Appellants cite other working provisions of the venture to sustain their position that a separate employing entity was in fact established. Of course the purpose of the argument is to sustain appellants' position that Gardner Engineering Corporation was a third party rather than an employer within the contemplation of the workmen's compensation act. Ark.Stat.Ann. § 81-1302(a) (Repl. 1960). Appellants cite not a single authority which sustains their position that the nature of the organization of S.O.G. removes it from the general rule we applied to joint ventures in Smith v. Rodgers.
Appellants rely heavily on Abbott v. United States, 207 F.Supp. 468 (D.C., 1962). Steers, Inc., was a member of a joint venture which constructed an offshore radio tower for the United States Navy. The work was completed and the joint venture terminated in 1957. Three years later, Steers alone contracted to perform repair work on the tower and while so engaged the tower collapsed and the decedents were on it. The deaths were covered by workmen's compensation provided by Steers alone. The death actions against the joint venture were predicated upon the original design and construction and Steers argued that there could be no recovery against it as a joint venturer. The court sustained plaintiffs' theory of possible liability of the joint venture, giving two reasons. First, it was said that the joint venture was not responsible for workmen's compensation for the deaths. Second, it was pointed out that some of the decedents *780 were not employed by Steers until after the joint venture ended. This case fails as a precedent for appellants' position because in the case at bar Gardner Engineering is responsible for payment of workmen's compensation payments to appellant Ralph Lewis. It is nothing more than a coincidence that Gardner, one of the joint venturers, happens to have manufactured the hoist.
The final argument is that Gardner should be estopped from invoking the exclusive remedy provision of the compensation law "in order to escape its liability as the manufacturer of a product separate and apart from the joint venture". We find no merit in the argument. Gardner is discharging its responsibility to Ralph Lewis as an employee. And under the law, which was settled in Smith v. Rodgers, that is the extent of Gardner's obligation.
Affirmed.
FOGLEMAN, Justice (dissenting).
I believe that the court has overlooked the thrust of the principal argument of appellants on this appeal in applying Smith v. Rodgers, 251 Ark. 994, 477 S.W.2d 831, to one of appellants' arguments. The argument which I think has merit is advanced in connection with their points II and III, stated as follows:
II. The defendant, Gardner Engineering Corporation, as a joint venturer, is a "third party" with respect to Gardner Engineering Corporation, as a manufacturer of the hoisting clamp.
III. The defendant should have been estopped from invoking the exclusive remedy provision of the Arkansas Workmen's Compensation Act in order to escape its liability as the manufacturer of a product separate and apart from the joint venture.
These points are rather lightly treated by the majority, apparently on the basis that it is nothing more than a coincidence that Gardner happened to have manufactured a hoist used on the job. This coincidence provides the distinction between this case and Smith v. Rodgers, supra, and calls upon the court to meet the question posed head on and not as if it were either incidental or coincidental. Because of the "coincidence" I would reverse the summary judgment and remand the case for further proceedings.
The appellants alleged in their complaint that Lewis was injured because of the malfunction of an automatic hooking device (not a hoistprobably properly a hoisting clamp) manufactured by appellee and furnished for use on the hoist utilized for lifting and moving sheet piling on the job where Lewis was employed by the joint venturers. They alleged that appellee negligently and carelessly manufactured the device under a design which made it dangerous for its intended use, that appellee was negligent in the adoption of the design, in failing to test or periodically inspect the device and in failing to warn users of the dangers inherent in its use. Appellants asserted that they relied upon express and implied warranties that the device was safe and fit for the purposes intended and that Lewis' injuries were the direct result of the negligence of and breach of warranty by appellee.
The documents constituting the agreement between the joint venturers were exhibited with appellee's motion for summary judgment. Nothing therein obligated either of the venturers to furnish any particular equipment, and there was no obligation on the part of Gardner Engineering Corporation to design, invent or furnish the device in question. The agreement did require the payment of rent to each party for its equipment that was used by the joint venture. A schedule of the major equipment rental was attached. Keeping of complete books of account of the venture *781 was required. There is also a provision that each venturer shall have a one-half interest in any property and equipment acquired in connection with the project undertaken. The cost of equipment purchased was classified by the agreement as a construction cost. Sale of equipment purchased to one or the other of the joint venturers at a price to be agreed upon was permissible upon completion of the work contracted, but not required.
The deposition of Elmer C. Gardner discloses that the particular hoisting clamp was invented by him and another officer of appellee and built at appellee's shop in Houston, Texas, and that the joint venture was charged a fee for the device. Ralph Lewis made an affidavit that he was injured when struck by sheet piling being lifted out of the Arkansas River by means of this automatic clamp attached to a 150-ton crane. He said that the clamp bore a plate reading "Manufactured by Gardner Engineering Corporation, Houston, Texas, Shop No. 493 Date 8-67." He also stated that there were two methods of attaching and releasing the sheet piling, other than by use of the automatic hoisting clamp. By deposition, Lewis testified that this device had been used on the job only a few months, and that the parts of the clamp seemed to wear with use so that the spring which made the hooking device automatic would fail to function. He also deposed that when this occurred, the sheet piling would fall from the hook, that employees of the venture had worked on the device and that the last such hook used was different from the one first used in that two or three remodeling changes had been made.
In passing, I note that appellee's workmen's compensation insurance applied only while a member of the joint venture was acting within the scope of his duties as such.
Appellants do not seek to recover for the furnishing of unsafe equipment by the joint venture or the joint venturer. They seek to recover from appellee as a "third party," under allegations hereinabove referred to on the basis of negligence or breach of warranty in the manufacture and distribution of a faulty device, a step that certainly was outside the purposes of the joint venture, i. e., the construction of a lock and dam.
With this factual background I submit that the "dual-capacity" doctrine should be invoked. See 2 Larson, Workmen's Compensation Law 226.20, et seq., § 72.80. Professor Larson states it thus: "* * * an employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer." So much of what this eminent authority has to say is applicable here that I take the liberty of extensive quotation. He adds:
"The most striking example has already been noted in the California case of Duprey v. Shane. This is the case in which a chiropractor's employee, injured in the course of employment, was treated by the chiropractor himself, who negligently aggravated the injury by treatment. The employer was found to be, in his role as treating doctor, a `person other than the employer,' and thus vulnerable to a common-law suit.
"The commonest type of dual-capacity case is that in which the employer's second set of obligations springs from his status as an owner. Florida has held, as we have seen, that a general contractor who was also the owner of the land and building on which the injury occurred, although protected from suit as the employee's statutory employer, was open to suit as owner of the premises. Tennessee and New York have reached the opposite conclusion on comparable facts. But New York has in effect held that the capacity of owner of a truck may be separate from the capacity of co-employee.

*782 "In 1963 the Supreme Court of the United States, without actually using dual-capacity language, in effect applied the dual-capacity technique to a shipowner whose second persona was that of longshoring employer. The bareboat charterer of a ship (which is for present purposes equivalent to shipowner) hired longshoremen directly, instead of following the more common practice of engaging a stevedoring company to handle its loading and unloading. An injured longshoreman brought an action against his employer as bareboat charterer of the vessel for injuries caused by the unseaworthiness of the vessel. The employer defended on the basis of the exclusive remedy provision in the Longshoremen's and Harbor Workers' Compensation Act. The United States Supreme Court stated that:
`only blind adherence to the superficial meaning of a statute could prompt us to ignore the fact that . . . [the] employer of a longshoreman was also a bareboat charterer . . . charged with the traditional, absolute and nondelegable obligation of seaworthiness which it should not be permitted to avoid.'
The employer also liable for compensation benefits under the Longshoremen's Act, was held liable to his employee as the bareboat charterer, for injuries arising out of the unseaworthiness of the chartered vessel.
"The primary issue in this class of case is: what is the test of true dual capacity?
* * * * * *
"The decisive dual-capacity test is not concerned with how separate or different the second function of the employer is from the first but with whether the second function generates obligations unrelated to those flowing from the first, that of employer. The legal obligation of a shipowner to maintain the vessel in seaworthy condition, for example, is quite independent of the status of employer. It differs in character and extent from that of a stevedoring company, even if the stevedoring company also is the shipowner. The obligation would exist even if the shipowner had no employees, and it runs to persons other than employees.
Similarly, it can at least be argued that the liability of the owner of land is different from that of an employer working on the premises. The legal doctrines governing the responsibilities of landowners to different classes of persons entering upon the land are ancient and distinctive, and again are different in quality and range from the rules governing the liability of a contractor to his employees.

* * * * * *
The New York case of Costanza v. Mackler has some of the characteristics of a dual-capacity case. The holding was that the co-employee immunity created by the New York Act did not extend to the defendant employee in his capacity as owner of the truck involved in the accident, and that therefore he could be held liable under the New York vehicle owner's liability law. The defendant regularly rented two trucks to his employer. The alleged tort was based on the condition of the truck. A loose floorboard had struck the plaintiff, a fellow employee of the defendant. The court made short work of the issue by assimilating it to the situation in which the co-employee was not in the course of his employment at the time of the accident, and concluded:
`The alleged tort charged of the defendant is independent of and not related to the common employment of both . . . .'

*783 "It should be observed, however, that the Costanza problem is not identical to that in the course-of-employment cases. In Costanza the truck, so to speak, was in the course of employment at the time of injury. The most satisfactory way to rationalize the case, then, is under the dual-capacity concept. The defendant was being sued as truck owner for his own negligence in that capacity. * * * In Costanza the defendant was relying on his own status as co-employee, and to defeat this defense it is necessary to say that his negligence in furnishing a defective truck was not conduct in his capacity as co-employee.
"Once a valid dual-capacity situation is established, whether as to employer or employee, this is not necessarily an end of the matter. There remains a possible dispute on which of the two capacities should control.
"In the case of the contractor-employer who is also an owner, the defendant employer will say, `You cannot sue me; the compensation act says that compensation is the exclusive remedy against me.' To which the employee-plaintiff will reply, `That may be true, but I am not suing you as employerI am suing you as owner.' The employer replies, 'Whatever else I am is immaterial, because the act gives me immunity to suit by you, and that's that.' Whereupon the employee rejoins, "Your immunity is only as employer: I am suing you as premises owner." And so on.
"How should this standoff be resolved? It is submitted that the employee has the better of the exchange, for two reasons. One is that the plaintiff has, so to speak, the choice of weapons; if he chooses to sue defendant as owner, that establishes the character of the suit, and defendant must meet plaintiff on his own terms. The second reason is the well-established principle that obliteration of a valuable and longstanding cause of action should not be found except when statutory language destroying the cause of action is clear; any doubt, then, should be resolved in favor of preserving rather than abolishing that right."
The cases mentioned in the above quotation are: Duprey v. Shane, 109 Cal.App.2d 586, 241 P.2d 78 (1951), aff'd 39 Cal.App. 2d 781, 249 P.2d 8; Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963); Costanzo v. Mackler, 34 Misc.2d 188, 227 N.Y.S.2d 750 (1962), aff'd 17 App.Div.2d 948, 233 N.Y.S.2d 1016. In Reed, the court was treating an act, which, like our own, permitted actions for damages against "third persons" but provided that compensation liability of an employer was exclusive in place of all other liability on his part. The United States Supreme Court, in reaching its result, stated the rule of liberal construction to conform with the purpose of the act so often applied by this court.
It was never intended that our workman's compensation statutes should immunize one who happens to be an employer from any and all liability to one who happens to be his employee. Amendment 26 of our Constitution only authorized the General Assembly to enact laws prescribing the amount of compensation to be paid by employers for injuries to employees. It prohibits any other limitation on the amount to be recovered for injuries. This certainly means that the General Assembly can only prescribe limitations relating to injuries arising out of the employer-employee relationship. Any effort to extend the limitation to insulate the employer from a liability which does not arise out of the relationship seems to me to violate this provision of the Constitution, particularly when read in the light of Article 2, Section 13. See Emberson v. Buffington, 228 Ark. 120, 306 S.W.2d 326. To say the least, a limitation having this effect is not authorized by this section. In my opinion, the legislature has not even attempted to do *784 that which the majority opinion makes it appear to have done. A review of the statute reveals no such intention to me. The remedy under the act is made exclusive by Ark.Stat.Ann. § 81-1304 (Repl. 1960), but I submit that this applies only to liabilities arising out of the employer-employee relationship. We have said that the purpose of the act is to compensate only for losses resulting from the risks to which the fact of engaging in the industry exposes the employee. Birchett v. Tuf-Nut Garment Mfg. Co., 205 Ark. 483, 169 S.W.2d 574. Liability under the act is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of the employment. McGregor & Pickett v. Arrington, 206 Ark. 921, 175 S.W.2d 210. Because of this purpose, we should not extend the limitation on the injured employees' remedy beyond the purposes of the act or beyond the constitutional limitation on the act. Failure to recognize the dual capacity doctrine in this case does both.
I observe that Smith v. Rodgers, supra, fully recognizes the possible application of the dual capacity doctrine. We only held that under the facts of that case "Smith was nothing more or less than a joint venturer and as such is exonerated from liability as an employer by the Workmen's Compensation Law." We went on to say that even if Smith were considered as something other than an employer, the evidence failed to show any liability in any other capacity (i. e., intermediate supervisor or bailor). My question is: Why should Gardner Engineering Corporation be relieved of its liability as a designer and manufacturer by the fortuitous circumstance that it happened to be the employer of the injured party in an unrelated undertaking?
I would reverse the summary judgment, recognizing that there may well be factual issues to be determined as to the capacity in which appellee acted in the premises.